## GRANT *v.* UNION PAC. RY. CO.

*(Circuit Court, S. D. Iowa, W. D.* March Term, 1891.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE.
   It is not negligence on the part of a railroad company to have switches without lights on them in its yard, unless it appears that it was the common and uniform practice to have such lights, and that the switchmen had a right to expect them.

2. SAME.
   Where a switchman is run over while passing from one switch to another in order to turn the latter, the jury must determine whether it was negligence on the part of the company that the foreman, who had turned the switch, so that there was in fact no need for plaintiff to go to it, failed to inform plaintiff that the switch had been turned.

3. SAME—DANGEROUS SPEED—EVIDENCE.
   The jury must determine whether the engine was negligently run at a high and dangerous rate of speed, and a town ordinance regulating the speed of locomotives within the town is to be considered, together with the rest of the evidence.

4. SAME—CONTRIBUTORY NEGLIGENCE.
   Where plaintiff is injured while passing along the track between the two switches by stumbling on obstructions by the side of the track, as he claims, while defendant claims that he slipped while attempting to get on the pilot of the moving engine, the jury must determine what caused the accident, and if they find that plaintiff was injured while attempting to board the engine he cannot recover.

[1]40 N. W. Rep. 96.

**5. SAME—ACCIDENT.**
   Where it appears that the injury resulted from a "pure accident" there can be no recovery.

**6. SAME—MEASURE OF DAMAGES.**
   Plaintiff's age, habits, ability to earn, expectancy of life, pain, and suffering, together with the contingencies of human life, are to be considered in estimating the damages.

At Law.

*T. J. Mahony*, for plaintiff.

*John N. Baldwin*, for defendant.

SHIRAS, J., (*charging jury orally.*) In this case the plaintiff, John Grant, seeks to recover damages in the sum of $25,000 against the defendant, the Union Pacific Railway Company, for injuries which he avers he received while in the employ of that company, in November, 1887. Before passing to the discussion of the principal questions which it will be necessary for you to consider and determine in this particular case, it will be well for me to instruct you upon the general rules that apply, in law, to parties who occupy the relation to each other of master and servant, and also some other general principles which should have weight and bearing in a case of this character. It is a recognized principle of the law that persons who enter upon any given employment assume the risks, hazards, and dangers that pertain to that particular business, when the same is carried on in a proper and careful manner. Your common experience has taught you that there are some of the businesses and avocations of life that are more dangerous in their nature than the ordinary avocations; and your common experience has shown you, gentlemen, that this business of railroading is particularly a business in the conduct of which there is risk, hazard, and danger. This grows out of the fact that in the management of railroads and trains, on account of the great weight of the locomotives and cars, and the speed at which they are run,—from the facts which inhere in the very nature of the business itself,—a person who assumes the position of an employe of that character, whose duties call him about trains or locomotives when they are being moved, is of necessity subjected to a greater risk and hazard than pertain to the ordinary avocations of life. Therefore it is true that a person who enters upon this business of railroading assumes himself all these risks and hazards, no matter how great they may be; that is to say, the risks and hazards that grow out of the business, and are inherent in it when properly carried on. He does not, of course, assume any risk or danger caused by the negligence of the railroad company. The duty and obligation is placed upon the railroad company, as the master, to use ordinary care in furnishing for its employes a safe place and safe appliances with which to perform the work expected of them. Now, what is meant by "ordinary care" is that degree of care which a prudent man would exercise in view of the circumstances that surround him at a given time. It is a recognized principle of the law that when human life and human limbs are at stake or in danger, the exercise of "ordinary care" requires greater caution, foresight, and prudence than are re-

quired ordinarily when human life and limbs are not in danger. But the law places the duty upon the employe himself, when he enters into a business of this character, which is dangerous in its nature, of exercising the same degree of care upon his part for his own protection. The very fact that the business in which he is engaged is by reason of its nature a dangerous one, and that the ordinary demands of the employment will require the employe to subject himself to these risks and hazards, requires the employe upon his part to exercise all the care, caution, and foresight for his own protection which a prudent and careful man should exercise when his own life or limbs are placed in danger or hazard. The duty and degree of care that are required of the master and of the employe are of the same character and degree, and are both defined as I have already stated.

Now, negligence consists in the failure to exercise that degree of care which the law expects of a party under given circumstances. In a case of this character it is not sufficient, to enable the plaintiff to recover, that it be simply shown to you that he entered the employ of the railroad company, and while in that employ the accident happened, thereby causing the injury and damage to him; that is not sufficient. Before the plaintiff can recover it must be shown, by a fair preponderance of the evidence, that the accident causing the injury resulted from some negligence upon the part of the railway company, or from negligence for which the railway company is in law held responsible. It is a further principle of the law that, if it appears that plaintiff himself, by negligence upon his own part, caused the accident, or contributed to the cause of the accident, he cannot recover. Of course, if the defendant company was not negligent, and the accident was caused wholly by the negligence of plaintiff, he would have no cause of complaint against the company, and could not recover. Furthermore, if the evidence shows that the negligence of both parties contributed to the cause of the accident, that defeats the right of recovery upon the part of the person injured. This is the doctrine which is known in law under the term "contributory negligence," and it is based upon the principle that the law does not attempt to separate the consequences of an act which has been brought about by the combined negligence of the two parties. When the negligence of both parties, master and servant, or plaintiff and defendant, has combined together to cause the accident, then the law grants neither party the right to recover against the other. It leaves the parties just where their own acts have placed them. Therefore, in cases of this kind, it is necessary, if it should appear that a given accident was due to the negligence upon the part of the defendant, that it be shown that the negligence was the proximate or immediate cause of the accident which caused the injury. And, furthermore, if it appears from the evidence that the plaintiff himself, by negligence upon his part, contributed to the accident, that would then defeat the right of recovery which he would otherwise have.

The jury are required, in determining cases, to weigh the testimony, and determine the credibility of the witnesses. In determining the credibility of witnesses the jury have a right to take into account the interest

they may have in the result of the case,—either a pecuniary interest or any other interest they may have,—which might affect the testimony they give in the case. You have a right to consider their means of knowledge, their mode of testifying, their candor or want of candor, if such may appear in any witness, and all the other facts and circumstances that may be developed in the case, which will aid you in determining the weight to be given to the testimony of the different witnesses, or, in other words, the credibility of the witnesses on behalf of both plaintiff and defendant. In this particular case, perhaps I should say further that it is permissible for parties to put in evidence, as affecting the credibility of a given witness, any statements that he may have made at other times, which may contradict in any material matter the testimony which he gives as a witness upon the stand, and this is upon the principle, which is well known to you, that if a party has voluntarily made statements at other times and places which are contradictory to his testimony upon the stand, it is apparent that he has been telling a different story, or giving different accounts of the same transaction; and when such is the case it is for the jury to weigh the circumstances, and determine the credibility and the weight to be given to the testimony of the witness who has testified before you. In the particular case on trial it is not disputed by the evidence that the plaintiff was in the employ of the Union Pacific Railway Company in November, 1887, the place of his employment being in the yards of the company at North Platte, Neb.; that on the evening of November 17, 1887, he met with the accident which resulted in the amputation of his foot, leaving it in the condition in which it has been exhibited before you. There is no dispute in regard to these general facts. It is in dispute between the parties as to where the responsibility for this lies. Now, it is not sufficient, as I have said, for plaintiff simply to show that he was in the employ of the railway company, and while in its employ met with the accident and received the injury. He must go further before he can be entitled to a verdict. He must show that the accident was due to negligence upon the part of the railway company, as the proximate cause of the injury which he has received.

It is claimed in the pleadings, on behalf of the plaintiff, that there was negligence in four particulars. But before I go to that, to make it a little more clear to you, I should say that the plaintiff has introduced evidence tending to show that in the performance of his duty towards the railway company on the night of the 17th of November, 1887, while in its yards at North Platte, he was called upon to turn a given switch, which has been spoken of in the evidence, I believe, as "Switch No. 1," and that this was done for the purpose of permitting the locomotive, which was in charge of the foreman, Ryan, to pass in upon a given track; and that then plaintiff endeavored to pass from switch No. 1 to another switch, No. 2, distant about 300 feet; that the object of plaintiff in passing from switch No. 1 to switch No. 2 was to change the switch, plaintiff thinking at the time that switch No. 2 was in such a condition as that, if it was not changed, the locomotive would run in upon another track,

and come in collision with other cars standing upon another track connected with the one upon which the locomotive was passing at the time. The evidence shows that, as a matter of fact, the plaintiff was mistaken as to the condition of the switch at the time; that in fact switch No. 2 was not in such a condition as that the locomotive would pass upon this track where the standing cars were. The evidence tends to show that switch No. 2 had been changed by the foreman, Ryan, after he had left the engine where plaintiff was engaged with others in placing coal upon it, and that plaintiff was not aware of that fact, and supposed the switch was in the condition in which he himself had left it an hour or so previous. The evidence on the part of the plaintiff tends to show that that was the idea which was present in the mind of the plaintiff, and that he conceived it to be his duty, after turning switch No. 1 to permit the engine to go in on that track, to pass immediately to switch No. 2 in order to put that in proper position so the locomotive would not run down upon the wrong track and come in collision with the cars standing there, and in the effort to go from switch No. 1 to switch No. 2 he met with the accident which caused the injury.

Now, on the part of the plaintiff it is claimed that the defendant company is chargeable with negligence in four particulars: *First.* That switch No. 2 was not a switch with a light upon it, and therefore it was impossible for plaintiff, in the darkness of the night, to know whether or not the switch was turned; the reason being that if the switch had had a light upon it plaintiff would have seen its position from switch No. 1. By looking at the lights he would have known the position of the switch, and would have seen there was no occasion for passing from switch No. 1 to switch No. 2 for the purpose of attending to it. He would have seen from switch No. 1 that it was turned, and in proper position. It is claimed that there was negligence on the part of the railroad company in not having a switch with a light upon it. *Second.* The second charge of negligence against the defendant is that the switch was turned by the foreman, Ryan, without communicating that fact to the plaintiff, so that, in the further discharge of the plaintiff's duty, as he conceived it to be, he endeavored to reach the second switch in order to turn it, supposing that it was in the condition in which he had left it. Plaintiff claims it was negligence upon the part of the foreman, Ryan, for which the defendant company must be held responsible, in having changed the condition of the switch without letting plaintiff know of same. *Third.* That the engine was run at a high and dangerous rate of speed when the foreman, Ryan, was moving it down upon this track, for the purpose of passing by switch No. 1, and along the track it was then proceeding upon. *Fourth.* That there were obstructions upon the side of the track, consisting of *debris* of one nature and another,—broken pieces of scantling, railroad ties, and lumps of coal, left there in such a condition as to render the way along which plaintiff was called upon to pass in going from switch No. 1 to switch No. 2 in a dangerous condition. The claim of the plaintiff is that by reason of these different facts and circumstances the accident was caused, and by reason of these several grounds of negligence charged against the de-

fendant company he has sustained or made up his claim of negligence against the company, authorizing him to recover a verdict at your hands. On the part of defendant these different allegations of negligence are denied. It is further claimed on the part of defendant that plaintiff was guilty of contributory negligence; that is to say, that it was through his own fault, and his own want of proper care for his own protection, he received the injury which occasioned this damage to him. Briefly stated, gentlemen, these are the claims made by the parties.

Now, as to the first allegation of negligence,—that the switch had no light upon it. There is no dispute in the evidence upon that. It is admitted, or we assume from the evidence, that it was a switch which had no light upon it. The question is, was that a ground of negligence? Does the fact that there was no light upon the switch authorize you in finding that the company was negligent in that particular? Now, as I have already said to you, the duty and obligation is upon the railroad company to exercise ordinary care; to put proper appliances upon its lines and in its yards for its employes when they are engaged in the performance of their duty. Has there been any evidence introduced before you, gentlemen, of parties who have skill and knowledge in that particular, tending to show that the use of switches without lights is negligence upon the part of the railway company? If the company has some switches in use without lights upon them, is that evidence of negligence on the part of the railway company? Is there any evidence in this case, gentlemen, to justify you in finding that the railway company was negligent in not having a light on switch No. 2? Now remember, gentlemen, in deciding a question of this kind, and all these questions in the case, you are to carry your minds back to the condition which the parties occupied at the time, just before the accident. To use a common phrase, as we all know, "hind sight is better than foresight;" but we cannot apply that rule in deciding a question of this kind. After the accident has happened we can, of course, look back, and say if this thing or the other thing had been done it would not have happened; but that is not a fair way to decide upon a question of negligence charged against the defendant in a case of this kind. We must go back to the condition of the yard before the accident happened on that day. Is there evidence before you that would justify you in finding that at that time the railway company was guilty of negligence in having that switch there without a light upon it? If there had been evidence introduced, gentlemen, that it was the common and uniform practice among railway companies preceding that time always to have switches with lights,— that that was the common practice, and that it was observed, and the employes had a right to expect that would be done,—that would be evidence tending at least to justify you in finding that the railway company was negligent in not having its switch thus equipped. But is there evidence of that kind before you, gentlemen? There is evidence tending to show, as I understand it, that in this particular yard some switches had lights and some had none. Now, before you are justified in finding that the company was guilty of negligence in this case you must

be satisfied by a fair preponderance of the evidence that, having a switch that way, in its yards, without a light upon it, was negligence on the part of the railway company, and that must be determined from the evidence in the case. If there is no evidence that would justify you in finding that, of course that would end that inquiry. But now suppose, gentlemen, that you should find that was negligence upon the part of the railway company,—having that switch there without a light upon it,—suppose you should find that,—there arises then another question as to the effect of the plaintiff's knowledge in regard to it. There is a principle recognized in the law that when a person goes into a service or employment and finds it is conducted in a particular way, that certain appliances are used, and he makes no complaint about it, but goes ahead and performs the work and labor with the appliances in the condition in which he finds them, and is not induced to remain in the employ by promises that it will be changed, ordinarily he is held to assume the risk that arises from that mode of carrying on the business. Therefore, if the evidence should satisfy you in this case,—and the plaintiff has testified that he was employed for a time in that yard, and knew switches were there without lights,—so, even admitting that you find there was negligence in that particular, is not the plaintiff himself to be held to have assumed any dangers that might arise simply from the fact that there were switches there without lights? It seems to me, gentlemen, that upon that issue you will have no difficulty in reaching a conclusion, as I have submitted it to you. The fact, however, even though you may find under the instructions I have given you that this cannot be considered as an independent ground of negligence,—the fact that the switch did not have a light upon it is a matter to be taken into consideration when you come to the other facts in the case, because, of course, the conduct of the plaintiff himself is to be viewed in the light of all the circumstances that actually surrounded him at the time.

Now, as to the second question, which is, as I have already stated, that this switch was turned by the foreman, Ryan, without the knowledge of plaintiff. Assuming that the evidence would justify you in finding that the switch was turned by Ryan, and that plaintiff did not know it was turned, and Ryan had not informed him of that fact, the question is, then, was it negligence upon the part of the railway company, or Ryan, as the representative of the company, to undertake to take down the locomotive without informing the plaintiff of the fact that the switch had already been turned, so that there was no necessity for him to go down to where switch No. 2 was located. Is there anything, gentlemen, in the evidence in the case that satisfies you that Ryan should have foreseen that plaintiff would make the effort to go from switch No. 1 to switch No. 2? In determining that you will take into account what the evidence shows the facts to be, and the position these parties occupied. Was it the duty of the plaintiff to turn these switches when locomotives were being passed over the tracks in that yard? If you find it was not his duty, and he had nothing to do with the switches, of course Ryan or the company would not be charged with the duty of

informing him of any change. On the other hand, if the evidence satisfies you that plaintiff, in the performance of his duty, would be expected to look out for these switches, and have them turned in proper condition, so that the locomotives might pass over them safely, then the question arises, what would be the natural and reasonable expectation as to what the plaintiff himself would do if he was placed in that position, and did not know that switch No. 2 had been turned by Ryan? Now, if it be true that the plaintiff had turned switch No. 2 an hour or so previously, and left it in such a condition as that it would need to be changed when this other locomotive came along, and he himself had not changed it, and he was required by his duty as a switchman to change it in order to allow this locomotive to go where they desired to take it, the question then arises whether or not plaintiff was not justified in assuming and believing that his duty called upon him to pass from switch No. 1 to switch No. 2, and see that the latter was in proper condition to prevent danger. And here the absence of a light upon switch No. 2 should be taken into consideration, because, if there was no light upon it, there was no way by which plaintiff could determine whether the switch was in the right condition or not by simply looking. It was in the night-time, and dark, and he could not see the switch or its position on account of the darkness if there was no light there, and could not determine its position, and therefore he was justified in going upon the knowledge which he then in fact had. Now, then, if the knowledge which he then in fact had, as he then understood it, was that switch No. 2 needed to be turned, and his duty called upon him to reach it in order to turn it so this locomotive could be moved along safely, he was justified in making the effort; at least that is evidence that would justify the jury in finding that he was justified in making the effort to pass from switch No. 1 to switch No. 2, although in fact it turned out that there was no real need for him to do it, because the switch had been turned by Ryan. Still you see, gentlemen, the question as to this second charge of negligence—as to whether Ryan was negligent in not notifying plaintiff that the switch had been turned—turns upon the question, not as to what plaintiff was justified in doing and assuming to do, but what Ryan should have foreseen that plaintiff would undertake to do if he was not informed that the switch had been turned. Was there any duty or obligation upon Ryan to notify the switchman, or the plaintiff, who was occupying that position, before he started, that switch No. 2 had been changed, and it was not necessary for him to go to it? If you find there was negligence in this particular, that still does not justify you in finding a verdict for the plaintiff, unless you are satisfied that that act of negligence, assuming you find it was negligence, was the proximate cause of the injury, because, as I have already instructed you, it must appear not alone that there were acts of negligence, but that they, or some one of them, were the proximate cause of the injury itself.

The next ground of negligence is that the locomotive was run at too high a rate of speed. The duty and obligation is upon the railway

company and those who represent it in the management of its engines to exercise due care in that particular when these engines are being moved, and moved under such circumstances that the switchmen are called upon to perform their duties about the tracks and locomotives, so that the locomotives will cause more or less danger and risk to the employe. The duty and obligation rests upon the company to exercise due care,—such care as a prudent man would exercise under such circumstances; to see to it that no unnecessary risk or hazard is caused to the employe. You will have to determine that question under the evidence,—as to whether or not that locomotive was or was not run at such a rate of speed as that it caused any unnecessary risk or danger to the plaintiff in the performance of the duty he was called upon to perform. There has been introduced in evidence an ordinance of the town of North Platte regulating or fixing the speed at which locomotives may be run within the boundaries of that city. As I understand it, these ordinances are passed principally for the protection of the general public, so that, as the public pass along the highways and streets of a city, where they have a right to go, no unnecessary risk or hazard will be caused to them by locomotives running at too great a speed. The ordinance has been introduced in evidence before you, and all I can say to you in that regard is that you are to take the entire evidence in the case,—all the facts and circumstances which the evidence discloses before you,—and determine from that whether or not the engine was run at such a rate of speed as in your judgment was too great, and of such a character as to be dangerous, thereby causing unnecessary risk and hazard to the plaintiff when he was called upon to go about the tracks in the performance of his duty as switchman. The burden is upon the plaintiff to satisfy you of all of these facts. If the evidence fails to satisfy you of these facts your verdict must be for the defendant, upon this question.

The fourth charge is as to obstructions. It is claimed by plaintiff that there were by the side of this track, where he was called upon to go in passing from switch No. 1 to switch No. 2, obstructions in the nature of pieces of scantling, railroad ties, lumps of coal, etc. You have heard the evidence in that particular, and it is a matter of fact for you to determine what the real condition of the track was. The burden is upon the plaintiff to satisfy you by a fair preponderance of the evidence that there were obstructions upon the side of the track before he can claim anything under this charge. If he fails to satisfy you that there were obstructions, that ends the inquiry so far as that particular charge of negligence is concerned. On the other hand, if the evidence satisfies you that there were such obstructions there, the next question is, was that the proximate cause of the accident, or did the obstructions aid in causing the accident? This brings us to the consideration of the fact of just how this accident did in truth occur. Upon the part of the plaintiff it is claimed that when he started to go from switch No. 1 to switch No. 2 he was required to go at a rapid rate of speed,—that is, to run; and that he found the engine was following him at a rapid rate,—at

such a rate that he would not be able to reach switch No. 2 ahead of the engine. That he then endeavored to give the signal to the engineer to stop by using his lantern, and turning his head, and shouting. That no notice was taken of his signal by the engineer. That the engine came up to him, and was about to pass him, and in some way he was thrown down and the injury inflicted. It is claimed by plaintiff that the immediate cause of his falling in this way was the fact that he was running along, and had turned his head for the purpose of shouting to the engineer to stop the locomotive, and that he tripped and stumbled against these obstructions; and here comes in the significance of the claim upon the part of plaintiff in regard to these obstructions. Upon the part of the defendant this is denied. It is claimed that the accident did not occur in that way, but that plaintiff himself attempted, when the engine came up to him, to get upon the front of it,—to mount the engine at what is called the "pilot,"—and that in the effort to do that he received the injury. Now, gentlemen, if the evidence satisfies you that plaintiff himself attempted to get upon the engine when it was going by at the speed it was actually traveling at, it is a question whether or not plaintiff himself was not guilty of negligence in making the effort to get upon the engine. If it be true that plaintiff himself attempted to get upon the engine, and in making the effort to do that he met with the accident, of course it then appears that the accident was due to his own action, and he cannot hold the company responsible therefor; for in the performance of his duty it is not claimed that he was called upon to get upon the engine at all. This was a mere voluntary act of his own. No command was given him directing him to go there. It was a voluntary act on his part. If he made that effort, and was caught, that is a matter for which he cannot hold the company responsible or liable to him in damages. It then, of course, turns upon a question of fact: Does the evidence satisfy you that that was in fact the way the accident happened? Here you have the point as to which there is the greatest divergence in the claim of the plaintiff and defendant. You have heard the evidence on both sides, and it is for you to determine what the fact in that particular was.

Does the evidence satisfy you that plaintiff received his injuries from stumbling upon any obstructions found there upon the side of the track, and that as a result—that while he was endeavoring to pass, in the performance of his duty, from switch No. 1 to switch No. 2—he stumbled and was thrown down in such a manner as to injure him? Or does the evidence satisfy you that plaintiff found the locomotive was coming up to him, and made an effort to get upon the locomotive, and in making that effort received the injury of which he complains? As I have said to you, if the evidence satisfies you that the accident happened in the way claimed by defendant, that ends the case. If the evidence satisfies you that the accident resulted substantially as claimed by plaintiff, viz., that while he was endeavoring to pass from switch No. 1 to switch No. 2 he stumbled and fell and received the injury, you are then to determine whether the accident was due to any negligence upon the part

of the railway company. Now, you will understand that, even though the plaintiff tripped and fell and received the injury in the manner claimed, that in itself does not render the company liable. It must still appear that that fall, and the consequent injury, were due to some negligence upon the part of the company. Many accidents may happen when parties are employed in the service of railway companies in the performance of their duties as switchmen. Their feet may trip upon coal, or ties, or other matters, and they may fall and receive serious injuries; but cases of that kind may be what we call in law "pure accidents," and neither party can hold the other legally responsible therefor. To enable the plaintiff to recover in this case he must satisfy you that the defendant company was negligent in some one or more of these particulars that he has charged, and you must be satisfied from the evidence that that was the proximate cause of the injury. Or, if you find negligence upon the part of the railway company, if the evidence also shows that plaintiff contributed to the happening of the accident, that will defeat his right to recover.

If, under the instructions I have given you, you find for the defendant, you will simply so state. If, on the other hand, you find for the plaintiff, you are then required to consider the amount of damages to be awarded him. In this particular case the elements of damage you are entitled to take into account in deciding the compensation to be allowed the plaintiff are the pain and suffering occasioned to him by this accident in the past and which may be occasioned to him in the future, and also its effect upon his ability to labor. Now, of course, it is apparent to you that parties cannot bring evidence before you showing the exact amount in dollars and cents of damages in a case of this kind. It is not like a case where property is taken or of damage to property which has a market value. In such cases proof can be brought before you as to its market value, and the amount of damages is a matter of mathematical calculation; but that cannot be done in a case of this kind. In such cases as this you are entitled to take into account the facts surrounding the injured party, his age, possible expectancy of life, and the position he occupied, and the amount of money he earned. When a person is engaged as a laborer, and his wages are so much, of course the money loss to him is not so great as if he occupied a higher position, and had higher ability to earn money. A man who can earn a thousand dollars a year, and is deprived of his ability to do so, does not, of course, suffer as great pecuniary loss as though he were able to earn $2,000. Still, as I have said, all the parties can do is to bring in evidence showing what the facts and circumstances are in each particular case,—the age of the plaintiff, his habits of life, his ability to earn money, his occupation, and the effect upon these of the injury he has received. Evidence has been introduced showing his expectancy of life. Now, it is not understood that you shall take the expectancy of life of a man, and then figure up that he has been deprived of his ability to earn so much money for each one of those years. This would not be a fair way of estimating

the damages, because, as we all know, it is impossible to determine whether a man will live out this expectancy of life or not. These insurance tables are based upon the probabilities of the average human life. It may be this man, if he had not received the injury, would not have lived a year, and he may live longer than his expectancy of life. There are so many uncertainties and contingencies in human life. We cannot say whether this man would have continued to earn $50 a month; and, on the other hand, he might have earned a larger amount. So you cannot take this and figure it out on a mathematical basis; but, taking all these facts into account, and remembering the uncertainties and contingencies of human affairs, it is for the jury to determine the fair lump sum which will compensate the plaintiff for the pecuniary damage caused him by the injuries he has received. Of course, if you find for the plaintiff, you should remember that this sum is awarded now,—it is awarded in lump. He receives it all at once, and it becomes free from the uncertainties of human life, and due consideration should be given to that fact in estimating the damages to be awarded. In cases of this kind, where there is evidence showing that the party has been put to expense for nursing and the services of a physician, that is another element of damage; but it is not claimed in this case, and there is no evidence before you showing that such an expenditure has been made, and you cannot take that into account, but you will estimate, in fixing the amount of damage, such a sum as will compensate the plaintiff for the pain and suffering caused him in the past and that will be caused in the future by the injury he received, and the pecuniary loss caused him by its effect upon his ability to earn money.