E. P. DUNLAP, *Appellee,* v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant.*

No. 17,659.

SYLLABUS BY THE COURT.

NEGLIGENCE—*Injury to Stock—Last Clear Chance—Concurrent Negligence.* The doctrine of the last clear chance does not apply so long as the two parties are concurrently negligent, for then the law will not compare or apportion the negligence. An owner of cattle having negligently permitted them to go upon a railway crossing, from which he was using due care to remove them, can not hold the railway company liable for failure of its engineer to discover the cattle upon the crossing, but only for failure to use proper care after actually seeing them there.

Appeal from Norton district court. Opinion filed May 11, 1912. Reversed.

*M. A. Low,* and *Paul E. Walker,* for the appellant.

*L. H. Wilder,* for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff drove seventy-eight head of cattle along the north-and-south highway which crosses the defendant's track about one hundred feet south of the Burlington crossing, both tracks being slightly above grade, causing a corresponding depression between them. The defendant's track from the crossing runs straight west about one-half mile. The plaintiff, with two hands, was coming south with the cattle, and when about twenty rods north of the Burlington crossing he drove ahead and stopped the cattle to permit one of the defendant's trains to pass. Afterward he testified that he looked and listened, but neither saw nor heard any other train, and permitted his cattle to string out along the road and over the two crossings. When he came upon the Burlington grade he saw an engine coming through the cut on the defendant's road, at which time there were fifteen to twenty of the cattle across the defendant's track. He rode to the defendant's crossing, dismounted and attempted to separate the cattle and clear the crossing, some of them being past twenty-five to thirty yards, about twenty-five being over the one and nearly all the others being between the two crossings. The cut is about fifteen feet deep, and there is nothing to obstruct the view between it and the crossing. The engine struck the cattle, killing seven and injuring another. The plaintiff had lived near for six years, was familiar with the situation, and had passed along the road every few days. The petition charged that the locomotive, with a tender attached, came east at an extremely negligent and dangerous rate of speed; that the plaintiff saw the engine when about three-eighths of a mile distant, and at once tried to turn back his cattle, but was unable to do so before the locomotive, without abatement of speed and without warning except to sound the danger signal when but a few feet away, ran into them; that the men

in charge of the locomotive had a clear and unobstructed view of the highway and cattle at all times after coming in sight thereof, and saw the cattle and was fully aware of the danger to them; that they actually stopped within eighty yards after striking them, and could easily have stopped before had they tried or desired to do so; that the injury was negligent, reckless and wanton, and that no attempt was made to stop or reduce the speed, but that the speed was constantly increased until after the cattle had been struck, and nothing was done to prevent the injury. The answer was a general denial and a plea of contributory negligence.

The jury found that the engineer first saw the cattle forty rods away, when there were two upon the track; that the engineer omitted to stop the engine; that the detailed negligence of the defendant was: "Being negligent—he ought to have stopped the engine." That eighty rods north of the crossing a train could have been observed, and that the plaintiff and his helpers were from five to ten rods north when they first saw the engine approaching; that after arriving at the crossing they did all they could in the way of getting the cattle off the track.

It will be observed that the allegations regarding the high speed and failure to give warnings are out of the case, the only negligence found by the jury being the failure to stop, the engineer having seen the cattle when forty rods from the crossing. The engineer testified that he saw two cattle on the crossing, and at once began to slow down, and when they left the track he saw no more, and released his brakes and went ahead; that as he got closer the whole bunch came upon the track, and he did everything he could to stop the engine, even to reversing, and had nearly stopped before he struck the cattle, and was then going five or six miles an hour, having slowed down from thirty to thirty-five miles an hour; that he was on the south side of the

engine and could not see to the left of the track, except when an object was at least thirty rods ahead of the engine; that he could see both rails for about one hundred and fifty rods; that he was within one hundred and fifty feet of the crossing when the cattle came in front of the engine; that there was no possible way then to stop in time to avoid the collision; that his engine was in perfect working order and was nearly new, and weighed one hundred and thirty-five tons. equipped. The fireman testified that he was in the deck putting in a fire, and when he heard the alarm whistle the engine was within fifty or sixty yards of the cattle; that at the time they were struck the engine was running about five or six miles an hour.

It is argued by the plaintiff that, having an unobstructed view for about half a mile, the engineer recklessly came on at a high rate of speed, which was shown not only by oral testimony but by the fact that the cattle which were struck were dragged and thrown a considerable distance.

The defendant's demurrer to the plaintiff's testimony was overruled, and at the close of the evidence it requested certain instructions, which were refused. The court gave, among others, the following:

"2. If you believe from the evidence that both parties were negligent, and that the plaintiff after seeing the approaching engine could have kept his cattle off the track of the defendant, and neglected to do so, then you should find for the defendant. But on the other hand, if you find that the defendant's employees in charge of the engine by the exercise of proper care and precaution could have seen the cattle upon the track in front of the engine and did not do so, or having seen them, could, with the exercise of proper care and caution, have stopped the engine in time to prevent the injury, and did not do so, then you should find for the plaintiff, notwithstanding the plaintiff may have negligently allowed the cattle to get upon the defendant's track in front of the approaching engine in the first instance.

"5. If you find from the evidence that the persons in charge of the defendant's engine exercised proper care

and diligence in discovering the cattle of plaintiff approaching or upon the track and used every means within their power to stop the engine before reaching the crossing, but were unable to do so, your verdict should be for the defendant."

It is manifest that the plaintiff could have seen the engine as it emerged from the cut, and although the jury found that he and his helpers after reaching the crossing did all they could in the way of getting the cattle off the track, still the defendant claimed that the plaintiff was negligent in permitting the cattle to string out as they did, and in not keeping them under his control. The findings on this point are to the effect that he exercised reasonable care, but they also show the distances at which he could have seen the approaching engine and at which he did see it, which are not consistent with the further finding that he was on the lookout; for one who can see an engine eighty rods from a crossing and is on the lookout ought to see it closer than "five to ten rods." So that the defendant's claim that the plaintiff was negligent in letting the cattle get upon the crossing was supported by sufficient evidence to take the question to the jury, and if such negligence existed, then the defendant's liability would not attach for failure to see the cattle, but only for injuring them after actually seeing them. Hence the doctrine of the last clear chance was directly involved.

The quoted instructions are to the effect that the plaintiff's negligence in letting the cattle get on the crossing would not preclude a recovery if the defendant's negligence after it ought to have seen them there caused the injury. Such is not the doctrine. The rule is that so long as the two parties are concurrently negligent neither can recover. Assuming that the plaintiff was negligent in letting his cattle get onto the crossing but not in his failure to get them off, then until the trainmen actually saw them there their not seeing them sooner did not render the defendant liable. But after

actually seeing them there the duty of the defendant was to use reasonable care to avoid injuring them, and for the want of such care only would it be liable. The true rule is stated in *Dyerson v. Railroad Co.*, 74 Kan. 528, 87 Pac. 680:

"If just before the climax only one party had the power to prevent the catastrophe, and he neglected to use it the legal responsibility is his alone. If, however, each had such power and each neglected to use it then their negligence was concurrent and neither can re-. cover against the other." (p. 536.)

The doctrine is based on the theory that one can not hold another accountable for his own carelessness, and on the further theory that, both parties contributing to the injury by their negligence, the law will not apportion or compare such negligence. But when the plaintiff or his property is once in a helpless condition, no matter by what cause, the defendant may not, after finding it thus, proceed to injure it either by willful act or by negligent act which he might have avoided by using reasonable care, because from that time the fault becomes his, which fault is the proximate or direct cause of the injury. Hence the rule, as frequently stated, is that the negligence of the defendant must be subsequent to that of the plaintiff. (*Railway Co. v. Bentley*, 78 Kan. 221, 93 Pac. 150; *Himmelwright v. Baker*, 82 Kan. 569, 573, 109 Pac. 178; *Marple v. Railway Co.*, 85 Kan. 699, 705, 118 Pac. 690.) Certain other rulings are complained of, but we find nothing therein showing material error.

In view of the evidence and the facts and conditions shown, the error in respect to the instructions was material, and the judgment is reversed and the cause remanded for further proceedings in accordance herewith.