Frank Burch v. Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Appellant.—40 S. W. (2d) 688.

Division One, June 24, 1931.

60

S. W. *Baxter* and *Charles A. Houts* for appellant; *H. N. Quigley* of counsel.

*Charles P. Noell, Charles L. Moore* and *Hensley, Allen & Marsalek*, for respondent.

ATWOOD, J.—This is an appeal from a personal injury judgment for $25,000 rendered after *remittitur* entered upon verdict for $43,-000 in favor of plaintiff, Frank Burch, and against defendant, Cleveland, Cincinnati, Chicago & St. Louis Railway Company, commonly known as the Big Four Railway Company.

It appears from the evidence that at the time plaintiff was injured he was employed as a switch tender by the Indianapolis Union Railway Company in its yards at Indianapolis, Indiana. While so employed at about 6:30 o'clock in the evening of March 8, 1924, he was run over by a Cincinnati, Indianapolis & Western Railway Company train and his right leg was injured so that it had to be amputated a few inches below the hip. His left leg and foot were also badly crushed. He claims to have stumbled over an unlighted dwarf signal hereinafter described.

A number of tracks running east and west were there located, belonging to various railroad companies over which trains were moved in and out of the Union Station at Indianapolis. Some of these tracks belonged to the Indianapolis Union Railway Company. One of them belonged to the Big Four, and to the south of this track was one belonging to the Cincinnati, Indianapolis & Western Railway Company. Between the Big Four track and the latter track, in the western part of the yards, was a dwarf signal about three feet high,

equipped with an oil lamp and a glass lens which faced towards the west, by which a red light or a green light, as occasion required, was projected westwardly as a signal to indicate to those in charge of approaching engines whether the switch at that point was open or closed. Although this dwarf signal was owned and maintained by defendant, its movements were controlled by means of wires or chains connected with a lever handled by an operator of the Indianapolis Union Railway Company stationed in a small building located about 150 feet northeast of the signal. Certain other switches in this yard had to be thrown by hand, and the men who threw them were known as switch tenders. Respondent and another switch tender named Haverly were working in the yard at the time respondent was hurt. Respondent ordinarily worked in the east and Haverly in the west end of the yard, but they "helped one another all the time in getting the work done." One of the switches which had to be operated by hand was located a little north and west of the dwarf signal and was known as the puzzle switch. Respondent had just thrown this puzzle switch and claims to have started from there to throw another hand switch about 250 feet to the east when he was injured. In leaving the puzzle switch he crossed over the Big Four track towards the Cincinnati, Indianapolis & Western Railway Company's track, upon which a train was moving eastwardly, and claims to have stumbled over defendant's dwarf signal and fallen against said moving train so that his legs were crushed.

Plaintiff went to trial on his amended petition which alleged negligence on the part of defendant as follows:

First. That it was the duty of the defendant to keep this signal lighted at all times during the darkness of the night, but unknown to plaintiff it was not lighted, although defendant knew, or by the exercise of ordinary care could have known, that the light was out in time to have lighted it and thereby prevented his injury.

Second. That it was the duty of defendant in the exercise of ordinary care to keep and maintain said signal stand in a reasonably safe condition, but neglecting its duty in this respect defendant negligently permitted certain wires and chains appurtenant to said dwarf signal to be exposed in a manner dangerous to persons, including plaintiff, walking in the path between defendant's track and that of the Cincinnati, Indianapolis & Western Railroad track south of it, and that plaintiff without knowledge of the defective condition of said dwarf signal stumbled over said wiring and chain and signal stand and was injured as aforesaid, although defendant knew or in the exercise of ordinary care could have known of said defective condition in time to have repaired same and avoided injury to plaintiff.

Third. That defendant knew or by the exercise of ordinary care could have known that said signal stand was unlighted in time to

have warned plaintiff of its dangerous condition and avoided injuring him, but negligently failed to do so.

Fourth. That the lamp in said dwarf signal, when in normal condition, would carry a light in the nighttime upon which plaintiff in the exercise of ordinary care for his own safety could and did rely so as to discover its whereabouts; that it was defendant's duty to light said lamp or cause it to be lighted in order that plaintiff might know the whereabouts of said signal stand and avoid being injured thereby, but that either said dwarf signal was defective in that after being lighted it would not stay lighted, of which defect defendant had knowledge in time to have remedied same and negligently failed to do so, or defendant negligently failed to light said lamp, plaintiff not knowing which but averring his belief in the one or the other alternative, by reason of which negligence he was injured.

Fifth. That defendant negligently failed to construct the dwarf signal, and wires appurtenant thereto, so that they would be reasonably safe for persons, including plaintiff, working in the yard, in that it constructed the dwarf signal with wiring exposed above the ground so that persons were likely to stumble over it.

Defendant's answer asserted:

First. That the plaintiff was guilty of contributory negligence, in that he knew the location of the dwarf signal and its appurtenances, and voluntarily placed himself in a position of danger.

Second. That the dangers there existing were necessary, ordinary and incident to the work in which plaintiff was engaged, and that he assumed the risks connected therewith.

Third. That under the laws of the State of Indiana, and under the laws of the State of Missouri, the plaintiff's cause of action was barred.

The second and third defenses above stated were, upon plaintiff's motion, stricken from defendant's answer.

With commendable brevity counsel for appellant in their reply brief stress two major propositions which, aside from other points raised, they say ought to be determinative of this case. These points are thus stated:

"First. The evidence showed (and Mr. Noell, who tried the case below, admitted) that the dwarf signal involved on this accident was used for no other purpose than to control the movement of trains. As the light in the dwarf signal was not placed there for the purpose of indicating to switchmen working in the yard the position of the target, its extinguishment could not be claimed to be a breach of a duty owing to Burch.

"Second. There was no evidence from which a jury could infer that the light was extinguished by the bolt mentioned in instruction

numbered 1 becoming loose—this being the sole ground upon which a recovery could be predicated under instruction numbered 1."

In support of the first point counsel for appellant cite Chesapeake & Ohio Ry. Co. v. Mihas, 280 U. S. 102, where the injured employee claimed the right to rely on a custom in switching cars to give warning to persons other than employees, although it appeared from the evidence that no such persons were in need of warning at the particular time in question; Railroad v. Conarty, 238 U. S. 243, where the injured employee sought protection of the Safety Appliance Acts, though not engaged in the act of coupling cars when he was injured; Lang v. N. Y. Central, 255 U. S. 455, similarly ruled on a like state of facts; Chicago, B. & Q. Railroad Co. v. Murray, 277 Pac. (Wyoming Sup. Ct.) 703, where an engineer fell and was injured while endeavoring to climb on top of his engine by catching hold of a rod primarily intended for control of a hand sander; Mansfield v. Wagner Electric Mfg. Co. (Mo. Sup.), 242 S. W. 400, where an employee who suffered an eye injury by particles flying from an emery wheel sought to hold his employer liable for failure to comply with a statute requiring machines generating dust, smoke or poisonous gases to be equipped with a hood; Rutledge v. Ry. Co., 110 Mo. 312, 19 S. W. 38, holding that where an employee was thrown from a car and caught his arm in the unblocked space between the rail and the guardrail failure to block should not be submitted to the jury as a ground of recovery, for the reason that the duty to block was intended for the protection of persons walking in and about switches; Degonia v. Railroad, 224 Mo. 564, 123 S. W. 807, holding that an employee may not rely on crossing signals not intended for employees; and Manche v. St. Louis Basket & Box Co. (Mo. Sup.), 262 S. W. 1021, holding that an employer is not negligent to an employee injured while walking on a defective platform not intended for that purpose.

The record before us discloses that plaintiff's counsel qualified his admission above cited by saying that the *primary* purpose of the light in question was to govern the movement of trains. There was substantial evidence that the lamp was regularly tended by a lamp lighter in the employ of defendant and customarily kept burning both day and night, and plaintiff testified that in the performance of his duties in that part of the yard, where until recently he had worked at night for a long period, he relied after dark upon this light, which could be seen for a number of yards both from the lens in front and from a peep hole behind, to give him the location of the dwarf signal stand. While not primarily so intended it seems that the light practically served this purpose. So, this is not a case where an employee or invitee has been injured by reason of putting an instrumentality or appliance to an inadaptable or illegitimate use. As long as the lamp was kept lighted it effectively marked the location of the switch

stand after dark. Nor is it a case where one has sought to bring himself within the provisions of a statutory regulation enacted for the sole benefit of a particular class to which he did not belong. Defendant was one of a number of railroad companies that owned and maintained tracks and signals in these yards, and all switching operations, including those for defendant's benefit, were controlled and performed by employees of the Indianapolis Union Railway Company, of which plaintiff was one. Therefore, when in the performance of his duties as switch tender plaintiff came upon and about defendant's property there situated he was an invitee with respect to defendant, and defendant owed him the duty of exercising ordinary care towards him subject to his own duty to use ordinary care for his own safety. [Chandler v. Railroad, 251 Mo. 592, 604, 158 S. W. 35; Hutchinson v. Safety Gate Co., 247 Mo. 71, 98, 152 S. W. 52; Clark v. Railroad, 234 Mo. 396, 420, 137 S. W. 583.] Defendant owed plaintiff the same care in this respect that it owed its own employees. [52 C. J. sec. 2172, p. 620; Tinkle v. Railroad, 212 Mo. 445, 469, 110 S. W. 1086; Jewell v. Bolt & Nut Co., 245 Mo. 720, 737, 151 S. W. 966; Jetter v. Terminal Ry. Co. (Mo. App.), 193 S. W. 956, 959.] We fail to discern the applicability of cases cited by appellant on this point.

It appears from the direction in which plaintiff was going when he fell that he could have seen the exact location of the signal stand in time to have avoided it if this lamp had been lighted. While plaintiff's contributory negligence is not urged in appellant's points and authorities, yet it is argued that by the light of the lantern he carried he could have discovered the location of this signal stand in time to have avoided it. But there was substantial evidence that this lantern was primarily designed for use in giving signals and afforded very little light to the carrier, shining ''just around close to your feet,'' and that the particular switching movement in which plaintiff was then engaged required him to walk fast, ''almost a run.'' Reference has already been made to evidence that defendant employed a lamp lighter charged with the duty of cleaning, filling and caring for this and other signal lamps, that it was defendant's long established custom to keep these lamps, including the one attached to the dwarf signal in question, burning both day and night, and that in the performance of his duties in that part of the yard at night plaintiff relied upon this light as an effective and dependable means of locating the position of this signal stand. From its long established custom of maintaining this light defendant must have known or anticipated that invitees, such as plaintiff, while working in that part of the yard after dark would naturally adopt

the practical use of locating the signal stand by its lighted lamp and expect no stand where there was no light. It does not appear that plaintiff failed to use ordinary care for his own safety. Under all the circumstances in evidence we think that defendant owed plaintiff the duty to exercise reasonable care to keep this lamp burning, and appellant's first proposition above stated is disapproved. As said in Yazoo & M. V. Railroad Co. v. Dees, 121 Miss. 439, 465, 466:

"The appellant's switching crews in the discharge of their duty must necessarily walk between the tracks in its yard, so that it was the duty of the appellant to exercise reasonable care to keep the space between these tracks reasonably safe for that purpose. These switch stands unmarked by lights would undoubtedly be a menace to the safety of these switchmen on dark nights, because of their liability to fall over them as did the appellee in the case at bar, though it may be that if they had never been marked by lights their presence between the tracks would only have added to the care which the switchman must observe in walking between the tracks at night, as to which we are not now called upon to express an opinion, for the obstructions which the appellant placed between the tracks were not mere switch stands, but switch stands on which there were lights which it proposed to keep constantly burning and to avoid which less care was required on the part of its employees than would have been required of them to avoid unlighted switch stands. The lights were integral parts of the switch stands, and the appellant's employees would naturally associate one with the other and trust to the lights in locating and avoiding the switch stand. The placing of the lights on these switch stands by the appellant, whatever its primary purpose in so doing may have been, was in effect an invitation to its employees to use them for the purpose of locating and avoiding the switch stands, a use for which they were suitable and to which from their very nature the appellant must have known its employees would put them. It follows, therefore, that the appellant by placing the lights on the switch stands became charged with the duty of exercising reasonable care to keep them burning, so that its employees would not be misled by their absence in locating and avoiding the switch stands."

The same doctrine is indicated in Grant v. Union Pacific Ry. Co., 45 Fed. 673, 678. Also, under similar circumstances the Supreme Court of Virginia said in N. & W. Ry. Co. v. Whitehurst, 125 Va. 260, 267:

"The duty of the defendant to keep the lamps lighted for one purpose, coupled with its regular performance, was, in effect, a representation by the defendant to the plaintiff, on which the latter had

a right to rely, that the lamps on the targets would be kept lighted each night, and as the plaintiff's injury proximately resulted from a reliance upon this representation, the defendant is liable for the consequences. Compare Vickery v. New London R. Co., 87 Conn. 634, 89 Atl. 277.''

We are also unable to approve appellant's second proposition that ''there was no evidence from which a jury could infer that the light was extinguished by the bolt mentioned in Instruction No. 1 becoming loose.'' Plaintiff testified that at the time he was injured a Big Four passenger engine was waiting in the block and he was hurrying to throw the switch about a hundred and twenty-five feet east of the dwarf signal where he was injured, that as he walked in that direction he faced the dwarf signal and expected the signal light to be burning, that the light was out, and he fell over the signal which struck him above the hip and threw his feet under the passing cut of cars. Witness Silcox testified that he was attracted to the place where plaintiff was injured by his cries and before plaintiff was picked up he examined the lamp on the dwarf signal stand, found the light out and the lamp loose on account of a loose bolt where it was fastened to the stand, and that as soon as plaintiff was carried to the shack he procured a lantern, returned to the scene of the accident and found the lamp still unlighted and upright with the top thrown back and cold to the touch. Witness Thompson testified that he heard plaintiff's cries and arrived just as three men were picking him up, that he struck a match and observed that the light in the switch stand was not burning and that the lamp was upright with the top thrown back. Witness Haverly testified that some few weeks prior to the date of the accident they had some trouble with this lamp on account of a loose bolt which at times when the block was pulled permitted the lamp to catch on the rim of the lens and tilt over and go out, that this defective condition was reported to the Big Four dispatcher, but he did not know whether or not the lamp had been repaired before plaintiff was hurt. Defendant made no effort to show that this defect was repaired, but relied upon other testimony introduced in its behalf tending to show that the lamp was burning shortly before and soon after the accident. Counsel for appellant argue that since witnesses testified that after the accident the lamp was found upright with the top thrown back there was no causal connection shown between the loose bolt and the extinguished lamp. However, it appears that in falling plaintiff's body struck the signal stand upon which the lamp was mounted, and witness Bausum, who operated all signals controlled from the shanty including this dwarf signal and was the first person to reach plaintiff after he was injured, testified that as soon as he heard his cry and before going to him he

"went out and closed all the blocks, every one of them," by pulling the levers close at hand. The jury might well have inferred that this position of the lamp and the condition of its top were caused by these intervening forces after plaintiff stumbled. On the whole record we think there was sufficient evidence to go to the jury on the question of whether or not the light was extinguished as a result of the loose bolt in question.

Among other matters presented under head of appellant's points and authorities is the claim that there was no proof that defendant knew or had notice that a bolt was loose in the dwarf signal so as to cause the light to go out. Witness Haverly testified without contradiction that this condition was discovered and reported to the Big Four dispatcher a few weeks before the accident. We may take judicial notice that the train dispatcher of a railroad is the field officer having charge of the movement of trains and that notice to the dispatcher of anything pertaining to the operation of trains is notice to the company. Furthermore, it appears from defendant's evidence that the dispatcher was the person notified of the existence of such defects in the usual and regular course of business, because defendant's witness Bausum on cross-examination admitted that on previous occasions when this light went out he notified the train dispatcher of the defect. In the absence of evidence to the contrary it will be presumed that this operator, who pursuant to telephonic information as to train movements handled the levers that controlled this and other switch signals, was in the performance of his duty in so reporting such a defect and that this was the course of procedure adopted for imparting such notice and that it was effective for that purpose. [McCallister v. Ross, 155 Mo. 87, 94, 55 S. W. 1027; Chlanda v. Transit Co., 213 Mo. 244, 261, 112 S. W. 249; Hartwell v. Parks, 240 Mo. 537, 546, 144 S. W. 793.]

Counsel for appellant also say that plaintiff's use of this light for the purpose of locating the signal stand was not known to and acquiesced in by defendant. We have already disposed of this point in ruling that on account of defendant's long established custom of keeping this lamp lighted and practically serving that purpose it must have known or anticipated such use by invitees, such as plaintiff at work in the yard.

Appellant's assertion that plaintiff was not engaged in the performance of his duties at the time he was injured must also be disregarded. While at that time Haverly generally worked in the west end of the yard and plaintiff in the east end, yet the evidence is clear that they aided each other in any part of the yard as occasion required.

It is also urged that plaintiff's Instruction No. 1 is defective in that:

"1. It did not require the jury to find that the defendant knew that Burch relied upon the light in the dwarf signal to indicate its location.

"2. It did not require the jury to find that the premises of the defendant were rendered unsafe through the absence of the light."

These objections appear to be without merit. As already observed, under the facts in evidence defendant was bound to know that men working in the yard at night would rely upon the signals being lighted in accordance with the usual custom, and was bound to know that under the circumstances unlighted signals would constitute highly dangerous obstructions in the dark. The instruction fully covered the situation in that it required the jury to find that defendant knew of the defective condition of the signal and failed to remedy it, and that such failure constituted negligence on its part.

Counsel for appellant also say that the judgment is excessive, but cite no particulars in support of the bare assertion. After a careful review of the evidence we are not inclined to order a further *remittitur*.

Other matters are suggested in appellant's printed argument which were not presented under the head of points and authorities, so they will be treated as waived.

The judgment of the trial court is affirmed. All concur.