HARRY S. SCOTT and THE TRAVELERS INSURANCE COMPANY v. MIS-SOURI PACIFIC RAILROAD COMPANY, a Corporation, Appellant.— 62 S. W. (2d) 834.

Division One, August 3, 1933.

376

*Thomas J. Cole, Lyman J. Bishop* and *D. C. Chastain* for appellant.

*Thomas C. Swanson, Trusty & Pugh* and *Mosman, Rogers & Buzard* for respondents.

380

FRANK, P. J.—Action to recover damages for personal injuries sustained by plaintiff, Scott, at Arkansas City, Kansas. The case was instituted in the Circuit Court of Barton County, and went on change of venue to the Circuit Court of Vernon County, where a trial was had which resulted in a verdict and judgment for plaintiff for $16,000, and defendant appealed.

Scott was an employee of the Kanotex Refining Company, and was injured in a collision between an automobile truck and defendant's train at a railroad crossing. The Kanotex Refining Company was operating under the Compensation Law of Kansas and the Travelers Insurance Company was its compensation carrier. Immediately after the accident the insurance company began paying Scott compensation and paid his hospital and medical bills.

The petition charges defendant's negligent violation of a long-established custom, known and relied on by all persons using the crossing in question to have a watchman stationed at such crossing to give warning of the approach of cars and engines, negligent failure to give reasonable warning under the circumstance, and the violation of the last clear chance doctrine.

The answer alleged that under the Compensation Law of Kansas, Scott's acceptance of compensation operated as an assignment of his cause of action; that under the contract between the Kanotex Refining Company and defendant railroad, the Kanotex Refining Company was equally liable with the defendant, and the Compensation Law barred any recovery. The answer also denied the alleged negli-

gence of defendant, and set up that Scott's injury was the result of his own negligence. The reply contained a general denial. Various statutes and decisions of the State of Kansas are set out in the petition, answer and reply.

■ Appellant's first contention is that Scott's acceptance of compensation under the Compensation Laws of Kansas operated as an assignment of his right of action and for that reason he cannot maintain this suit.

This contention is based upon Section 4, Chapter 232, Laws of Kansas 1927, page 390, which reads as follows:

"When the injury or death for which compensation is payable under this act was caused under circumstances creating a legal liability against some person other than the employer to pay damage, the injured workman or his personal representative shall within ninety (90) days of the date of receiving said injury elect whether to take compensation under this act or to pursue his remedy against such other person. Such election must be in writing and must be delivered to the employer in person or by registered mail, and the acceptance of compensation by an injured workman shall be construed as a positive election to accept compensation under this section. Failure on the part of the injured employee or his personal representative to file a written election with the employer within ninety (90) days that he will pursue his remedy against the negligent third party shall operate as an election to accept compensation and as an assignment of any cause of action in tort which the employee or his personal representative may have against any other party for such injury or death, and such employer may enforce in his own name, or the name of the workman, the liability of such other party for their benefit as their interest may appear."

The exact question here presented has been decided by the Supreme Court of the State of Kansas contrary to appellant's contention. That court has construed the statute under consideration as one intended purely for the benefit of the employer and employee. The Kansas decisions hold that: "When an employee and his employer are within the provisions of the Workmen's Compensation Act, and the employee is injured by the negligence of a third person, the employee, or his dependents, if the injury results in death, may proceed to recover compensation from the employer, and at the same time may maintain an action for damages against the third party whose negligence caused the injury. In such a situation the fact that the employee has proceeded to obtain compensation from his employer by settlement or otherwise is no defense to an action for damages, nor can that fact be shown by the defendant upon the trial of such action." [Early v. Burt, 134 Kan. 445, 7 Pac. (2d) 95; Jolley v. United Power & Light Corporation, 131 Kan. 102; Riddle v. Higley Motor Co. (Kan.), 252 Pac. 231; Moeser v. Shunk, 116 Kan. 247,

226 Pac. 784.] As the case at bar is governed by Kansas decisions, further discussion of the question is not necessary.

■ Contention is also made that the statute in question does not provide for a joint action, and for that reason the joinder of the injured employee and the insurer as parties plaintiff constitute a misjoinder. Workmen's Compensation Exchange et al. v. C. M. St. P. & P. Ry. Co., 45 Fed. (2d) 885, is cited in support of this contention. As we read the cited case, it holds exactly contrary to appellant's contention. Concerning the right of an insurer who is obligated to pay an award to join with the party entitled to bring the suit, the cited case says: "In this connection, however, in respect to the right of the exchange, the insurer, to join with the employer timber company where it has obligated itself to pay the award, it would seem to have that right under the recognized rule granting to insurers the right of subrogation by operation of law to sue the one who has caused the damage or loss which it has paid or is paying. (Citing authorities.)"

■ The next contention is that plaintiff, Scott, was guilty of contributory negligence barring his right to recover because of the primary negligence alleged in the petition.

The main line of defendant's railroad runs through the grounds of Kanotex Refining Company at Arkansas City, Kansas. Four switch tracks, two on either side of the main line and leading therefrom serve the refining company. These tracks run in a general east and west direction. A graveled roadway leading from a city street south of the refinery runs northward, crosses the tracks of defendant, and extends on northward a distance of two hundred feet to a gate entering the refinery company's property. There were no private signs on this roadway. It had the appearance of a public road and there was nothing at the crossing to indicate that it was a private crossing. The roadway and crossing were much used by the employees of the refinery and by the general public in going to and from the refinery. It was a general practice and custom of defendant to have an employee of the switching crew on the crossing to flag or warn travelers when a cut of cars was being switched over the crossing or when switching was being done. Plaintiff testified that when cars were being switched over the crossing, they always pushed up close to the crossing and a man got off the cars to flag the crossing.

Parts of the refinery's plants and its field of operation were located on both sides of the railroad tracks. On the day in question, Scott was at the plant on the north side of the tracks. H. J. Creighton, his foreman, ordered him to get the truck and take some valves to the pressure still which was located on the south side of the tracks. He got into the truck, at the wheel, with his foreman, Creighton, seated by his side. He drove through the gate which is located about two hundred feet north of the tracks, then proceeded, southward along

the roadway toward the tracks, traveling at from eight to ten miles per hour. When he reached a point about fifteen or eighteen feet north of the north spur track, he put on the brakes, threw the motor out of gear, and practically stopped the truck. He looked in both directions to see if a train was coming, and looked to see if there was a man on the crossing or coming toward the crossing. He listened but heard no sound of an approaching train. He saw no train, and there was no watchman on the crossing. At that time, his foreman, Creighton, who had also been looking and listening, said, "All right." Scott then started the truck forward and when within ten feet of the track, his foreman said, "Look out." Scott then saw the tank car coming from the west about fifteen feet west of the crossing. Realizing he was too close to the track to stop, he applied the brakes and turned the truck to the left in an attempt to avoid the collision, but the tank car struck the truck in such a position that it remained in front of the car and was pushed down the track. No bell was rung, no whistle was sounded and no warning of any kind was given. The train consisted of twenty cars and an engine which was pushing the cars eastward over the crossing.

The collision occurred about five o'clock in the evening in the month of October. The day was clear and the sun was shining. Scott testified that when he looked and listened for a train, he thought at the time that he could see down the track from 100 to 150 feet, but in fact the sun obscured his vision so that he could not see the train. Defendant's witness, Moore, the conductor of the train, testified that a driver coming along the road in question and looking to the west would be blinded by the sun; that shortly after the collision he took a look for himself and could not see any reason why the sun would not blind him; that there was no question in his mind that if the sun had not blinded Scott, the collision would not have occurred. Scott testified that he knew of the long-established custom of defendant to keep a watchman at the crossing to flag or warn travelers of the approach of cars or engines, and he relied on the absence of the watchman as a sign of safety; that he relied somewhat on the view he had of the crossing and west of the crossing; that he saw his foreman looking and relied somewhat on what the foreman told him because he did not think he would tell him wrong.

If Scott had relied solely on the fact that his view of the approaching train was obstructed, we would hold that he was guilty of contributory negligence as a matter of law. Under such circumstances it would have been his duty to have stopped his truck and determined whether there was an engine or cars approaching before he drove the truck on or dangerously near the track. [Wehe v. A. T. & S. F. Ry. Co., 97 Kan. 794.] Such is the rule in both Missouri and Kansas. But where, as in the case at bar, there are other facts and circumstances in the case calculated to cause an ordinar-

ily prudent person to conclude that he could cross the track in safety, the question of contributory negligence is one of fact to be determined by the jury. In the instant case, the absence of a flagman at the crossing to warn travelers of the approach of trains, and the fact that no warning of any kind was given, together with other facts and circumstances touching the *quantum* of care exercised by Scott, tended to show that he was not guilty of contributory negligence and made that question an issue of fact to be determined by the jury. Considering a like state of facts in the recent case of Kindig v. Atchison, Topeka and Santa Fe Ry. Co., 133 Kan. 459, 1 Pac. (2d). 75, the Supreme Court of Kansas said:

"It is, of course, the well-settled law in this State that a railroad track is of itself a sign of danger, that one crossing it at an intersection must realize that he must stop for the train, that the train cannot stop for him, and that due care on his part requires that he look and listen for approaching trains, and if his view is obstructed and it is essential for his safety for him to do so, that he stop and if necessary go forward and look for trains. [Wehe v. Railway Co., 97 Kan. 794, 156 Pac. 742, L. R. A. 1916E, 455, Ann. Cas. 1918D, 230; Acker v. Railroad Co., 106 Kan. 401, 188 Pac. 419; Rule v. Railway Co., 107 Kan. 479, 192 Pac. 729. See, also, Baltimore & O. R. Co. v. Goodman, 275 U. S. 66, 48 Sup. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645.] But he is not, under all circumstances, as a matter of law, required to stop before crossing a railroad track. [Jacobs v. Railway Co., 97 Kan. 247, 154 Pac. 1023, L. R. A. 1916D, 783, Ann. Cas. 1918D, 384.] At busy intersections, such as busy city streets, where a flagman is ordinarily kept when trains are crossing, the absence of the flagman at the time he attempts to cross is a matter proper to be taken into consideration by the jury in determining his contributory negligence. Where a railway maintains a mechanical device, such as an electric bell, less reliance can be placed upon it than could be placed on the flagman, for it may be out of repair. [Jacobs v. Railway Co., supra.] Perhaps it is more accurate to say that the person approaching the intersection cannot rely entirely on the fact that the mechanical device is not in operation where one is maintained, or that the flagman is not present where one is usually maintained. He still is under the duty to use due care for his own safety, but these are potent factors to be taken into consideration by the jury in determining his contributory negligence. [Bollinger v. Railway Co., 113 Kan. 124, 213 Pac. 644, and cases there cited; also Peterson v. Railway Co., 115 Kan. 751, 225 Pac. 116; Polfer v. Chicago, G. W. R. Co., 130 Kan. 314, 286 Pac. 240. . . .] The absence of any flagman, or anyone directing the traffic at the intersection, and the fact that the bell was not ringing, as well as all of the other evidence bearing upon the circumstances, were proper to be considered by the jury in determining whether the plaintiff was

guilty of contributory negligence. In view of all the facts and circumstances we deem that it was a proper question to submit to the jury.''

We hold that Scott was not shown to be guilty of contributory negligence as a matter of law.

It is contended that plaintiffs did not make a case under the last chance doctrine.

██ ██ Under the Kansas rule ''no duty of defendant arises under the last clear chance doctrine so long as plaintiff is guilty of contributory negligence. If such negligence of plaintiff ceases and he is in peril, it is the duty of defendant to exercise reasonable care to prevent injury to plaintiff.'' [Caylor v. St. Louis-San Francisco Ry. Co., 332 Mo. 851, 59 S. W. (2d) 661, 663, and cases cited.] We have determined that Scott was not guilty of contributory negligence as a matter of law, but there is another phase of the evidence not yet considered which clearly demonstrates that a case was made under the last clear chance doctrine.

Moore, defendant's conductor, testified that before the train struck the truck, he saw that a collision was imminent and gave the signal to stop the train; that it took about a second or two to get the signal to the engineer; that the train was traveling three or four miles per hour.

The collision derailed four wheels of the car. McKee, defendant's engineer testified that because four wheels of the car were off the rails and on the ties, there would be about two feet of slack in the train; that he could stop the train within five or six feet after he got the signal.

There was a switch stand located east of the crossing. The distance from the crossing to the switch stand was variously estimated by the witnesses at from 45 to 130 feet. Defendant's conductor, Moore, testified that the distance was from 125 to 130 feet. The truck was shoved in front of the train from the crossing to the switch stand where it was overturned. The impact of the collision did not injure Scott. He was not injured until the truck was overturned at the switch stand. The train moving at the rate of four miles per hour would travel a distance of twelve feet in the two seconds of time required to relay the stop signal to the engineer. If the engineer could stop the train within a distance of six feet after he received the signal, the train could have been stopped within eighteen feet after the signal was given. The signal was given before the collision occurred. Without doubt Scott was in a position of inescapable peril, and was not guilty of contributory negligence during the time the truck was being shoved 130 feet down the track. The evidence tends to show that the train could have been stopped after the collision occurred and before the truck overturned and injured the plaintiff. We therefore hold, that a case was made for the jury under the last

clear chance doctrine. [Dunlap v. Chicago, Rock Island & Pacific Railroad Co., 87 Kan. 197, 123 Pac. 754.]

It is contended that plaintiffs' given Instructions 3, 4 and 6 conflict with defendant's given Instruction D.

The claim is that plaintiffs' Instructions 3, 4 and 6 submitted to the jury the question of whether or not the plaintiff was guilty of contributory negligence affecting his right to recover for the alleged primary negligence of defendant, while defendant's Instruction D told the jury that plaintiff was guilty of contributory negligence as a matter of law which prevented a recovery, unless the jury found for him under the last chance doctrine. For reasons heretofore stated, a case was made for the jury under the primary negligence charged in the petition, and for that reason plaintiffs' instructions were right and defendant's instruction was wrong. The instructions do conflict, but the conflict is produced by the error in defendant's instructions. Defendant will not be permitted to profit by an erroneous instruction given in its behalf, although it conflicts with proper instructions given for plaintiff. [Sprague v. Sea, 152 Mo. 327, 53 S. W. 1074, and cases cited.]

It is contended that plaintiffs' Instruction No. 3 is erroneous in that it failed to require the jury to find that Scott, by the exercise of ordinary care, could not have known of the approach of the train. The instruction is not subject to this criticism. It required the jury to find that Scott did not know of the approach of the train, and in addition thereto, required a finding that under all the conditions and circumstances shown by the evidence, he exercised ordinary care.

Contention is made that Instruction No. 4 is erroneous in that it required the jury to find that defendant's employees knew that persons who used the crossing knew of the custom to flag it and relied upon its observance by defendant.

The complaint made is that there was no evidence that defendant's employees had such knowledge. It was not necessary for plaintiffs to prove that fact in order to make a case. This being true, the requirement in the instruction that the jury so find, could not have harmed defendant.

Further contention is made that plaintiffs' Instruction No. 4 was erroneous in that it, in effect, told the jury that Scott had an absolute right to rely upon the alleged custom of having a watchman at the crossing.

This contention cannot be sustained. The instruction required the jury to find the existence of the custom, plaintiffs' knowledge thereof and reliance thereon, the defendant's negligent failure to observe the custom and that such negligent failure was the direct cause of the collision. The instruction then went one step farther and required the jury to find from the evidence and for plaintiffs in accordance with Instruction No. 3 before a verdict for plaintiffs was authorized.

Turning to Instruction No. 3 we find it required the jury to find, among things, that plaintiff did not know of the approach of the train, and that under all the conditions and circumstances shown by the evidence, he exercised ordinary care.

It is claimed that plaintiffs' Instruction No. 6 was erroneous in that it told the jury that if the crossing had been much used by persons to the knowledge of the defendant and that the defendant knew or should have known that persons were likely to be upon the track at the time in question that it was the duty of defendant to give a reasonable signal or warning of the approach of the train. We think this instruction correctly states the law.

The theory advanced is that because the crossing in question was on the property of the Kanotex Refining Company, it was a private crossing and for that reason defendant owed no duty to guard or protect it. Regardless of the merits or demerits of this contention, defendant is not in a position to raise the question. Defendant's witnesses in charge of the train testified that when cars were kicked across the crossing without an engine attached thereto it was the custom and practice to have a man at the crossing to warn travelers of the approach of the cars, but where, as in this case, cars were being pushed across the crossing by an engine, it was the custom and practice to have a man on the rear car. The only purpose of having a man on the rear car would be for him to signal the engineer in case of danger or give some other adequate warning. Having tried the case in the court below on the theory that it was the custom and practice to guard the crossing, this court will not lend a listening ear to the claim that defendant owed no duty to guard the crossing because it was a private crossing.

Contention is made that the court erred in refusing defendant's requested Instruction No. 8. This instruction directed the jury to find for defendant in event it found that the cause of the accident and injury to plaintiff, and his failure to see the approach of defendant's train. was the fact that the sun was shining. from the west and obstructed his view.

The instruction was calculated to confuse and mislead the jury and cause it to believe that if the sun was shining from the west and obstructed Scott's view of the approaching train, he was guilty of contributory negligence in attempting to cross the track, and for that reason could not recover.

Such being the effect of the instruction it was erroneous for two reasons: (1) It ignored facts and circumstances heretofore pointed out, which made plaintiff's contributory negligence one of fact to be determined by the jury; and (2) it wholly ignored the case made for plaintiff under the last clear chance doctrine.

Contention is made that the court erred in permitting plaintiff, Scott, and witness, Reeves, to testify that very shortly after the

collision defendant's conductor, Moore, said to Scott, "I am sorry, buddy, but I believe it was all my fault."

Defendant states in its brief filed in this court, that the objection to the alleged statement of conductor, Moore, is not that it was not closely enough connected to be a part of the *res gestae.* As defendant does not object to the statement on the ground that it was not a part of the *res gestae,* we need not give that question further notice. The objection made here is that the statement is not a statement of any fact but is an opinion and conclusion of the witness. No such objection was made in the court below. The question is, therefore, not open to review in this court.

Contention is made that the court erred in admitting the testimony of witness, Brown, to correct an alleged error in the deposition of witness, Bookwalter.

Plaintiff took the deposition of witness Bookwalter and introduced it in evidence as a part of his case. The witness, Bookwalter, testified in her deposition that she was familiar with the crossing in question; that she drove over the crossing in taking her husband to and from work at the refinery; that when cars were moving over the crossing there would be a man there to stop travelers; that he would sometimes be on the end of the car and sometimes on the ground, but usually on the ground. Then there appears the following question and answer in the deposition:

"Q. Do you remember of any instance where there wasn't a man there on the cars? A. No I don't remember of any in particular."

After the deposition was introduced in evidence, plaintiff called witness, Brown, the shorthand reporter who took the deposition. It appears from his testimony that the word *cars* appearing in the foregoing question was incorrectly copied into the deposition; that his stenographic notes showed the word to be *crossing* instead of *cars.* He testified that in taking the deposition the word sign for *cars* was K. R. S.; that the word sign for crossing was K. R. S. with a dot under it to express "ing."

Plaintiff was not, as defendant contends, attempting to contradict his own witness, but on the contrary was endeavoring to make the deposition speak exactly what the witness said. The deposition itself tends to show the mistake. It is hardly probable that the witness would say in one breath that the man who guarded the crossing was usually on the ground, and in the next breath say that she did not remember any instance when the man was not on the cars. We think plaintiff had a right to correct the deposition from the notes of the stenographer, but we do not approve of the manner in which he attempted to do it. However, in view of what the witness said in her deposition, and in view of the entire record in the case, we do not regard the matter of sufficient moment to work a reversal of the case.

 In appellant's printed argument complaint is made of plaintiffs' Instruction No. 10 on the measure of damages.

In appellant's assignment of errors there appears a general assignment that the court erred in giving Instruction No. 10 on the part of plaintiff. No point is made against this instruction in appellant's points and authorities. Our Rule 15 provides, among other things, that appellant's brief shall distinctly allege the errors committed by the trial court, and shall contain in addition thereto, a statement in numerical order of the points relied on, with citation of authorities thereunder. While the general assignment that the court erred in giving Instruction No. 10, is good as an assignment of error, but standing alone, it does not comply with our Rule 15, in that it does not distinctly allege what the vice in the instruction is nor the point on which appellant relies. Where, as in this case the particular point relied on is not made in the "assignment of errors" nor in the "points and authorities," it will not be noticed in the printed argument but will be treated as abandoned because not properly presented for review under our rules. [Moffett v. Butler Mfg. Co., 46 S. W. (2d) 869, 873; Aulgur v. Strodtman, 329 Mo. 738, 46 S. W. (2d) 172, 173; Burch v. Cleveland, C., C. & St. L. Ry. Co., 328 Mo. 59, 40 S. W. (2d) 688, 693.]

The final contention is that the verdict is excessive.

 The theory advanced in support of this contention is that if defendant is to be held liable, the amount of the recovery should be measured by the Compensation Law of Kansas. The fact that Scott's employer, Kanotex Refining Company, was operating under the Compensation Law, has nothing whatever to do with defendant's liability or the amount of the recovery. If defendant's negligence was the cause of plaintiff's injuries, defendant is liable to plaintiff in damages. If, and when, the judgment is paid, it may then be determined whether the employer and its insurer are entitled to be subrogated to the rights of plaintiff by reason of payments made by them to him under the Compensation Law. The question as to who is finally entitled to the proceeds of the judgment, does not effect defendant's liability to plaintiff, nor does it increase or diminish the amount of such liability. [Moeser v. Shunk, 116 Kan. 247, 226 Pac. 284.]

Defendant admits that plaintiff was badly injured. No contention is made that the verdict is out of proportion to the injuries sustained.

The judgment should be affirmed. It is so ordered. All concur.