A. F. POLLMANN, Executor, Appellant and Respondent v. FRANK SCHAPER, Respondent and Appellant.

St. Louis Court of Appeals.　Submitted on Briefs June 5, 1911. Opinion Filed June 30, 1911.

1. **LANDLORD AND TENANT: Tenancy from Year to Year: Termination.** Where a father and mother conveyed real estate to their son, reserving a life estate unto themselves, a parol contract thereafter made between them that the son should have possession of the premises conveyed during the parents' lives, rent free, in consideration of his furnishing them board, lodging and clothing, created a tenancy from year to year, which could not be terminated and a new tenancy with a money rental substituted, without notice in writing, as required by section 7882, Revised Statutes 1909.

2. ———: ———: ———: **Liability for Rent.** And where the son claimed and held possession of the premises under the terms of said contract, so long as he complied with its requirements, by providing a home for his parents, no money judgment for rent could go against him.

3. ———: ———: **Termination: Demand: Principal and Agent: Authority of Agent.** Where a father and mother conveyed real estate to their son, reserving a life estate unto themselves, and thereafter entered into a parol agreement with the son whereby he was given possession of the land during their lives, rent free, in consideration of his supporting them, and the surviving mother made no claim that the son was liable for rent, her direction to another son to look after her interests as widow did not authorize the latter to make a demand for the payment of rent, and a demand made by him was not such a demand as is required under the statute.

Appeal from Lincoln Circuit Court.—*Hon. James D. Barnett*, Judge.

REVERSED.

*Jesse H. Schaper* and *Chas. Martin* for defendant (appellant and respondent).

(1)   There is in this case no express contract creating the relation of landlord and tenant between the plaintiff and defendant, and no facts from which that relation could be implied; and unless the relation of landlord and tenant does exist between the parties, by express or implied contract, a suit for use and occupation cannot be maintained. Sec. 7886, R. S. 1909; Cohen v. Kyler, 27 Mo. 120; Sturges v. Botts, 24 Mo. App. 282; Hutton v. Powers, 38 Mo. 353; Edmonson v. Kite, 43 Mo. 177; Bank v. Ault, 80 Mo. 199; Young v. Downey, 145 Mo. 261; Hynes v. Ecker, 34 Mo. App. 658; Sterling v. Heinman, 108 Mo. App. 40; State ex rel. v. Dickman, 146 Mo. App 396. (2) Defendant entered upon land as owner under the deed from Wm. Schaper and the defendant agreeing to support and maintain them during their lives in release of the life estate reserved in the deed. The

plaintiff for years received and accepted the benefits of that agreement. The relation of the parties in respect to the land was as vendor and vendee, and even though defendant had not kept his agreement an action for use and occupation would not lie. Smith v. Stewart, 6 Johns 46; Vanderheurel v. Storrs, 3 Conn. 203; Bell v. Ellis, 1 Stew. & Port, 294; Little v. Pearson, 7 Pick. 301; Jones v. Tipton, 2 Dana 295; Miles v. Elkins, 10 Ind. 329; McNair v. Schwartz, 16 Ill. 24; Thompson v. Bower, 60 Barb. 477; Stacy v. Vermont & Railroad, 32 Vt. 551; Brewer v. Craig, 3 Harr. (N. J.) 214.

*Taylor R. Young* and *Avery, Young & Woolfolk* for plaintiff (respondent and appellant).

REYNOLDS, P. J.—Plaintiff's testatrix commenced this action in the circuit court of Lincoln county, claiming in her petition that she was the owner of a life estate in and entitled to the possession of certain real estate described; that in August, 1905, defendant, who is her son, by her consent, entered into possession and occupancy and cultivation of the premises, with the understanding and agreement between them that defendant should pay plaintiff a reasonable annual rental for the use, occupancy and cultivation of the premises; that ever since that date defendant has remained and continued in the use and occupancy and cultivation of them but has failed to pay the reasonable annual rental charged therefor, and that plaintiff has demanded of him that he pay reasonable rent as understood and agreed upon between them but that he has failed and refused to do so. Averring that the annual rental value is $275; that defendant has been in occupancy and use of the premises for three years, plaintiff claimed $825 to be due her from defendant, and averring demand and refusal to pay she asks judgment for that amount.

Defendant in his answer sets up that in 1890, his father, William Schaper, and his mother, the plaintiff, made and executed a deed to defendant to the lands mentioned in the petition, being intended as an advancement to defendant, the deed containing a reservation of a life estate in the father and in the mother; that when the deed was made the possession and control of the lands mentioned in it were turned over to defendant; that the father and mother, by agreement between them and defendant and in lieu of the life estate reserved in the land, agreed with defendant that he should support and maintain them so long as they should live, give and furnish them during their lives a home with him and furnish them with all necessaries, clothing and provisions and proper care and attention in their old age and as long as they should live; that defendant in good faith, acting under said agreement, took immediate control and possession of the land and for a great number of years before the death of his father, provided him and plaintiff with all the necessaries, clothing and provisions, etc., at great expense and outlay of money on his part; that after the death of his father, he continued to do the same for his mother and she had continued to live with and receive from him a home, provisions, clothing, care and attention for a long while, and at no time complained of or sought to repudiate the agreement so made and acted on as aforesaid. Averring that he is now and has ever been willing and ready to provide a home for his mother and furnish her with all the necessaries and comforts of life, he avers that it would be unjust and inequitable to permit plaintiff to now claim and demand rent out of the land.

The reply was a general denial and the plea of the Statute of Frauds against this agreement set up by defendant.

There was a trial before the court, a jury being waived, at which trial it was agreed that the annual

rental value of the premises in question is the sum of $200. The deed, introduced in evidence, purports to be in consideration of $1500 given to the son by his parents as an advancement, is in the form of a statutory warranty deed, with these reservations: First, "the parties of the first part reserve a life estate in all the above lands." Second, "the estate hereby granted in the above lands is subject to be defeated by the death of the said Frank Schaper without having been lawfully married, in which event the lands shall, go to the children of the said Wm. Schaper, share and share alike."

The plaintiff, Mrs. Schaper, testifying, said that she is now living in St. Louis; had lived in Lincoln county at the old home place for over thirty-six years; her husband died the 3d of August, 1905. Asked this on her direct examination and testifying in her own behalf, "Did you ever have any agreement with Frank Schaper, your son, about him having the place there rent free," she answered: "No, he didn't have to pay any rent." Her counsel then said: "You didn't understand my question, Mrs. Schaper; what I want to ask you is whether you ever had any conversation or agreement with Mr. Frank Schaper, yourself, about him paying any rent?" She answered, "No, I never had a contract with Frank myself." She was then asked what conversation she had with Mr. Pollmann, now her executor, and whom it seems is her son by a former marriage, about looking after her affairs after the death of her husband, and she said she had appointed him to look after her business as her agent. Asked what business she wanted him to look after, she said: "I want to have my right as a widow." Asked if she had told him what rights she wanted to get as a widow or did she leave that to him, she answered, "I just wanted my rights and everything coming to me." This further followed in her direct examination:

"Q. Did you tell Mr. Pollmann, your son, to secure those rights? A. Yes.

"Q. Have you ever asked any rent from this farm? A. No.

"Q. Did Frank, your son, ever notify you at any time that he wouldn't pay you any rent for the farm? A. He didn't say that.

"Q. What did he say? A. Frank said that I had my home there, but no rent.

"Q. When did he say that? A. I can't say just when; it was since this trouble came up; never thought about it until this thing came up."

She said that she had told her son August F. Pollmann to look after her interest as widow directly after her husband died; that she had never received any rent from her son for the farm; could not set the length of time Frank had been cultivating it; had 'tended it several years before her husband died and had been cultivating it since that time just the same. On cross-examination she stated that after her son Frank became of age, which was a few months after the date of the deed, the deed had been delivered to him; that he had taken possession of the farm under the deed and managed it for himself, managed it as his own; kept for himself all the money made on the place; knows that from and after the time Frank took charge of the farm under the deed, he made an agreement with his father whereby Frank could have the farm without paying any rent but he was also to keep his father and mother in the house and take care of them; board them and furnish their clothing and take care of the old people. Asked if Frank had performed his part of that agreement and had done all these things up to the time of his father's death and up to the time she left the place in November, 1907, she answered, "Yes." That she had a talk with her son Frank the day before the trial and Frank said that they wanted him to pay rent. Asked what she told Frank in

that conversation, she answered that he did not have
to pay any rent.  On redirect examination she was
asked by her counsel to tell everything Frank had said
to her and she had said to Frank the day before about
paying rent.  She answered:  "That was about all
that was said about it.   Frank said that I was treating
him wrong; I didn't say anything much to him; I didn't
know what to say; he didn't want to pay any rent; he
hadn't paid any rent and didn't want to pay any now;
he didn't say anything more about rent."   She further
testified on redirect examination, that her son had not
given her money nor bought her clothing and had
never taken her anywhere to visit the other children,
except that he had taken her to the depot at Wright
City and the children had come after her; all the time
she lived at the house, Frank's wife did her washing for
her; when there was anything to be done, when she
was sick, Frank would go to the doctor; if anything was
needed Frank would get it; Frank would get her the
doctor when she needed him; took her to church, fur-
nished her with food; took her to Wright City when she
wanted to visit the children.   On recross-examination
she stated that whenever she wanted anything at home
after Frank took charge of the place, she would ask
him for it and whatever she would ask him Frank would
do; had furnished her everything she asked him to
furnish; provided her a room in the house; she had her
meals at the table with the family; his wife attended
to her room; they attended to everything she wanted
or asked for; they did this until November, 1907,
when she went away from the house; Frank had not told
her to go away; she went away of her own motion; her
children in St. Louis had come after her; they wanted
her to go to St. Louis.

A. F. Pollmann, the executor, testified that he was
a contractor living in the city of St. Louis, the son of
plaintiff and half brother of defendant; had visited the
old home place in Lincoln county in September, 1905,

and his mother was sick and in bed and called him to her and told him she wanted him to take care of her affairs. Had a conversation with his half brother Frank, the defendant, with respect to paying rent for the farm; told Frank his mother had appointed him as her foreman, as she called it, to look after her affairs and as their mother had a life estate in the home farm thereafter he, Frank, would have to pay rent for it; before he told him that, he asked Frank whether he would furnish his mother money to stay wherever she wanted to, and he said he would not. Whereupon Mr. Pollmann said, "Then I will be compelled to ask you to pay rent for the farm so she can go where she wants to;" told him that his mother had told him to take care of all her affairs. Frank said he would not pay any money; that his understanding with his father was, he was to feed them and clothe them and take care of them; did not say anything about any understanding with his mother; had never collected any rent from Frank for the place.

This was substantially all the evidence in the case.

At its conclusion defendant prayed the court for an instruction in the nature of a demurrer to the evidence, directing a finding for defendant. The court refused to give this, defendant excepting and standing on his demurrer. The court took the cause under advisement, found for plaintiff in the sum of $168.81. Both parties filed motions for new trial and plaintiff also filed one in arrest of judgment. All these were overruled, the parties excepting and both parties have appealed to this court.

Pending the appeal, plaintiff, Mrs. Schaper, died testate, appointing her son Pollmann executor. The cause was duly revived in this court, the executor entering his appearance.

The executor of Mrs. Schaper claims in this court that the trial court erred in failing to render a judgment for rent for the entire period beginning Septem-

Pollmann v. Schaper.

ber 5, 1905, to the date of suit. In support of this counsel argue that it was admitted that the appellant's testatrix was the owner of the real estate in question for life; that the reasonable rental value of it was $16 a month; that there is no question but that a demand for the rent was made on respondent in September, 1906, and that after respondent had been notified by appellant that he would be compelled to pay rent for the farm, he continued to occupy and raise crops thereon and use it as he had been using it in the past. To quote from the argument of counsel for appellant, "respondent was given the option of furnishing his mother with money to go anywhere she pleased, and when she pleased, or pay rent. He refused to furnish his mother this money. There is no reason on earth why he should not be compelled to pay rent." Counsel ask that the judgment be reversed and the cause remanded with directions to enter up a judgment in favor of appellant for the sum of $600.

On the part of defendant it is urged that there is no express contract creating the relation of landlord and tenant between plaintiff and defendant and no facts from which that relation would be implied, and that unless the relation of landlord and tenant exists between the parties by express or implied contract, a suit for use and occupation cannot be maintained; that the action for use and occupancy is founded on privity of contract, not on privity of estate and that as it appeared that defendant entered on this land as owner under the deed from his father and mother, agreeing to support and maintain them during their lives in release of the life estate reserved in the deed, and as plaintiff had for years received and accepted the benefits of the agreement, the relation of the parties in respect to the land was vendor and vendee, and even though defendant had not kept his agreement, an action for use and occupation would not lie.

On these points counsel for defendant asked that the judgment in the cause be reversed without the cause being remanded.

We have set out practically all the evidence in this case, and with all due respect for the learned trial court, are unable to find any law that, under the evidence, can sustain his judgment. Beyond the demurrer of the defendant, no declarations of law were asked or given. By the evidence in the case it is clear that from the time the deed was made by the father and mother to their son, while they reserved a life estate, they were to be boarded, lodged and clothed, and for this consideration the son was to occupy the land rent free. This created the relation of landlord and tenant, with rent payable in the above manner. This is clear from plaintiff's own testimony. This contract being in parol and for an indefinite period, it created a tenancy from year to year, which could not be terminated and a new tenancy with a money rental substituted without notice in writing as provided by section 7882, Revised Statutes 1909. This situation continued during all the period from the date of the deed down to the death of the father, and was kept up between the mother and son after the death of the father until some eight or nine months prior to the institution of this suit. The old lady herself distinctly says that her son Frank was to pay no rent, and in face of this, the demand by her son, now her executor, assuming to act as her agent, that his half brother pay rent, is obviously without her authority and not within the scope of his employment and not by her authority, according to her own statement, and is not such a demand as required under the statute. At no time did defendant assume or agree to assume the position of a tenant. He claimed and held possession under the terms of his original leasing. As long as he complied with the terms of that parol agreement by providing a home for his mother, no money judg-

ment for rent could go against him. [Shouse v. Kru-
sor, 24 Mo. App. 279.] In the light of the mother's
own testimony and of the situation of the parties
and of what transpired throughout this long course
of years, neither the plaintiff's testatrix nor plaintiff
as executor are entitled to judgment for rents.

The judgment of the circuit court is reversed.
*Nortoni* and *Caulfield, JJ.,* concur.