Myrtie E. Perryman, Administratrix of Estate of J. D. Perryman, v. Missouri Pacific Railroad Company, Appellant.—31 S. W. (2d) 4.

Division One, September 4, 1930.

*Thomas J. Cole, Arnot L. Sheppard* and *J. C. Sheppard* for appellant.

*Sam M. Phillips* for respondent.

ATWOOD, P. J.—This is an appeal from a judgment for damages on account of the death of J. D. Perryman, who while working for defendant Missouri Pacific Railroad Company as a car repairer, was killed in defendant's yards at Poplar Bluff, Missouri, on May 7, 1927, when an iced refrigerator car loaded with onions fell upon him. The petition was in conventional form and the answer was a general denial.

The evidence showed that this car was being used in interstate commerce, enroute from Odin, Texas, to St. Louis, Missouri. At Poplar Bluff the car was cut out of the train and placed on what is referred to as defendant's rip track on account of one or more flat wheels on one of its trucks. The repair job was one that required haste, and two crews were put on the job. The car was run on the rip track, which extended in a north-and-south direction, and only a short distance from defendant's supply house, where all repair supplies were kept. The wheels on the truck on the south end of the car were the ones giving the trouble, and in order to remove them it was necessary to jack up the south end of the car for a distance of eight inches or more, for the purpose of lifting the king bolt, so the trucks could be rolled southward and from under the car. The car was of the whale-belly type, that is, it had a long metal beam about eighteen inches wide, consisting of two pieces, which extended underneath the car from one end to the other, presenting a level portion for a distance of twelve to fourteen feet

and gradually sloping to a feather edge at each end. The method of removing wheels from cars of this character, under the foreman then in charge and pursuant to his orders and directions, as applied to this particular car, was to jack up the south end, by placing a jack under the southeast corner and one under the southwest corner of the car, and raising it to the height desired, by operating both jacks at the same time. It was Perryman's duty to take his sledge hammer and other necessary tools and go under the car and disconnect certain rods which, with the aid of the king pin, held the trucks of the car in place. Pursuant to his foreman's orders, either given at the time or prior thereto, he went under the car and disconnected the rods in question. Instead of using horses by placing them under both sides of the car or cribbing under both sides of the car to support it and keep it from falling when the trucks were removed, defendant adopted the method of building but one cribbing to hold the car, and that under the whale-belly toward the south end of the car. Experts testified that cribbing the car in this way was not customary and was improper and dangerous, and that either horses should be used or cribbing built under each side of the car. The thing that would render this method of cribbing dangerous would be something connected with the car itself and which would not be open to the observation of the men constructing the cribbing. In order for this method to be effective and hold the car in place, everything would have to be just right. If the car was not properly balanced, or if the load had shifted, or if the ice had melted more on one side than on the other, or if the whale-belly was uneven or loose, or if the back wheels moved, then the car was likely to fall, as in this instance it did. Defendant's foreman ordered Perryman to build the crib in this manner, and he complied with the order, and while he was under the car it fell upon and killed him.

Appellant's first assignment of error is as follows:

"The court erred in allowing incompetent and prejudicial testimony on the part of the plaintiff to go to the jury over the objections and exceptions of defendant, by the expert witnesses, by  allowing them to give their opinion based on what the experts may have heard the other witnesses say as to the manner of jacking up and cribbing the car; also in basing their opinions on how they, the experts, would have done it; also in allowing them to describe a method which was absolutely safe instead of reasonably safe."

The following question is illustrative of those cited under the above objections:

"Q. Assuming that an A. R. T. car on a level track, on a track running north-and-south, a jack at the southeast corner and a jack at the southwest corner, a cribbing constructed under the whale-belly part of the car with timber, say, twenty inches long and twelve inches

wide and three inches thick, in the manner described by witnesses Brown and Green, who have testified, I will ask you whether, in your opinion, such manner of cribbing that car would be proper or not?"

Similar objections were urged in Meily v. Railroad, 215 Mo. 567, 593, 114 S. W. 1013, and we there said:

"It has never been controverted that the opinion of expert witnesses must be based upon the facts of the case as shown to exist by the other evidence in the case, but there has been some contrariety of opinion as to how the facts of the case should be presented to the mind of the witness upon which to base his opinion. But long ago the courts and text-writers of this country have said that it may be done in two ways: first, by propounding hypothetical questions embracing all the facts of the case which the evidence of either party to the case tends to prove—the question must assume that those facts are true, and upon the assumed facts the witness must base his answer; and, second, in certain classes of cases, as in the application of mechanical appliances, where the evidence of the case shows the character of the appliances used and that the witnesses are familiar with those appliances, and that they know from their own knowledge and experience the proper and safe way of operating them, then the overwhelming weight of authority is to the effect that a general question may be asked regarding the proper and safe way to operate them, the question assuming without so stating that the witness has the knowledge and experience regarding the matters which the evidence tends to show he possesses. [Kaminski v. Tudor Iron Works, 167 Mo. l. c. 466; Longan v. Weltmer, 180 Mo. l. c. 340.]"

Also in 3 Jones's Commentaries on Evidence (2 Ed.) 2434, sec. 1331, it is said:

"In several jurisdictions the trial court, in its discretion, and as a matter of convenience, may allow the hypothesis to be put to the witness by referring him to the testimony, if he has heard it, predicating the injury upon the assumption that the facts heard or read are true instead of requiring counsel to recapitulate. Thus, if the expert has heard a deposition read, or has heard the testimony of a witness, or even of several witnesses in which no conflict appears, and if such testimony is not voluminous, he may give an opinion based on the assumption that such evidence is true. Likewise, where there is no conflict as to the material facts, the question need not be hypothetical in form. Under such circumstances the situation is really the same as though the evidentiary facts were restated to the witness in the form of a hypothetical question, but without the delay attendant upon the latter form."

We have carefully examined the questions and answers thus criticised by counsel for appellants and find that under the rule above stated the trial court did not err in admitting the testimony.

Appellant's second assignment is as follows:

"The court erred in overruling defendant's demurrer to the evidence at the close of the plaintiff's case and at the close of the whole case because the evidence fails to show that the defendant was negligent in failing to furnish Perryman a reasonably safe place to work."

The general rule is well stated in 39 Corpus Juris, pages 329, 330, thus:

"The master is not required to furnish the newest, safest, and best machinery, appliances, and places for work, but his obligation is met when he furnishes such as are reasonably safe and suitable for the purpose had in view. But in all occupations attended with great and unusual dangers, there must be used all appliances readily attainable for the prevention of accidents, and the neglect to provide such appliances is proof of culpable negligence."

In Spencer v. Quincy, O. & K. C. R. Co., 317 Mo. 492, 297 S. W. 353, l. c. 356, we said:

"If the method employed was not a reasonably safe one and other methods just as practicable and equally available were, as the evidence tended to show, then it was clearly negligent in adopting it."

There is substantial evidence in the record before us that the reasonably safe method of cribbing the car would have been, after jacking it up, to build a cribbing of equal height or place horses furnished for the purpose on each side of the car to keep it from becoming top-heavy and falling, instead of attempting to hold it in place by a cribbing under the sloping center beam about eighteen inches wide running lengthwise underneath the car, and it appears that the first method was just as practicable and available as the second which was adopted. The question of defendant's negligence was clearly for the jury.

Appellant next says:

"The court erred in giving to the jury plaintiff's Instruction numbered 1, because it is not based on the evidence."

Instruction 1 is as follows:

"The court instructs the jury that if you find and believe from the evidence that the defendant's foreman in charge of plaintiff's husband, J. D. Perryman, at the time and place mentioned in evidence, negligently ordered said Perryman to go under the refrigerator car mentioned in evidence and construct a cribbing under the whale-belly portion of said car, and at said time told said Perryman where, how and of what material to construct said cribbing, and if you further

believe and find from the evidence that said manner and place of cribbing said car so ordered by said foreman was not a reasonably safe manner and place of cribbing said car, but to the contrary thereof, was unnecessarily dangerous to one attempting to do said work in said place and manner and to those working around or under said car, and if you further find and believe from the evidence that said Perryman, pursuant to said negligent order, if any, of his said foreman and in obedience thereto, went under said car and attempted to crib the same as ordered by said foreman, and while engaged at some of the duties of said work and through no fault or negligence on the part of said deceased, but on account of said dangerous place and negligent method of cribbing said car (if you find the place of cribbing and method used was dangerous and negligent) that said car fell upon deceased and killed him as described in evidence, then and in that event your verdict in this case will be for the plaintiff.''

In support of the above assignment counsel for appellant say:

''The evidence shows without any question or contradiction whatever, that when Perryman was killed, he was not engaged in the duty of cribbing the car at all; that he had completely finished the cribbing and while the trucks were still under the car, and while it was impossible for the car to have fallen, and came out from under the car and was then and there ordered by the foreman to go off some 150 feet or more away to get two buckets of dope and bring them back there, and in direct disobedience of this order, he went back under the car where he had no duty whatever to perform, and the trucks were removed in the meantime, and then the car fell on him and killed him.''

There was some testimony that after Perryman finished the cribbing he came out from under the car. Foreman Claud Brown testified that he then directed him to go some 150 feet or more away and get two buckets of ''dope'' (oiled packing) for repacking the journals and boxing when the new wheels were placed on the trucks, and that instead of complying with this order Perryman again went under the car, which then fell on him. His brother, O. D. Brown, testified to the same effect. Foreman Brown was in the employ of defendant at the time of the trial and was called as a witness for plaintiff. The above testimony was drawn out on cross-examination. Plaintiff was not conclusively bound thereby. [Maginnis v. Mo. Pac. Ry. Co., 168 Mo. 667, 187 S. W. 1165, 1167.] Witness O. D. Brown was never called by plaintiff and testified only as a witness for defendant. The credibility of this testimony was, therefore, clearly a matter for the jury. Furthermore, there was substantial testimony that in disconnecting some rods preparatory to building up this cribbing Perryman had taken some tools under the car with him, that the character of cribbing was such as would require

the driving of wedges, that he was required to look after these tools and bring them out again, and that when the car fell he "was starting to come out on the east side right where his tools were." Under the circumstances in evidence the presumption should be indulged that he was engaged in the master's work at the time he was killed.

Appellant's next assignment is:

"The court erred in refusing to give to the jury Instruction No. 3-A asked by the defendant, for the reason that the evidence shows  that the trucks were not rolled from under the car while Perryman was blocking the car, nor was he ordered to go under the car while the trucks were removed."

Instruction 3-A requested by defendant is as follows:

"The court instructs the jury that they cannot find the issues for the plaintiff in this case on the grounds of negligence that the agents and servants of the defendant negligently rolled the trucks from under said car while the same was resting on the southeast jack; nor because defendant's foreman negligently and carelessly ordered and directed J. D. Perryman to do an unnecessarily dangerous thing to go under said car and attempt to block the same while the trucks were out from under said car."

The above is clearly a withdrawal instruction. The matters sought to be withdrawn from the jury were abandoned by plaintiff's failure to include them in the instructions requested and given. In such case it is not reversible error to refuse such withdrawal instruction. [Reith v. Tober, 8 S. W. (2d) 607, 320 Mo. 725; Siberell v. Ry. Co., 9 S. W. (2d) 912, 320 Mo. 916; Clift v. Ry. Co., 9 S. W. (2d) 972, 320 Mo. 791.]

Finally, it is said:

"The court erred in giving to the jury Instruction 5 for the plaintiff for the reason said instruction did not require them to apply the proper measure of damages."

Instruction 5 given at the request of plaintiff is as follows:

"The court instructs the jury that, if you find for the plaintiff, then you should, in assessing the damages, take into consideration the age and habits of life of the deceased, as well as the age of the widow, and the ages of the minor children of the deceased; and you should allow the widow such a sum as will be a fair and reasonable compensation to her for the pecuniary loss, if any, sustained by her on account of the death of her husband; and you should also allow the minor children of deceased such sum as will be a fair and reasonable compensation to them for the pecuniary loss, if any, sustained by each of them on account of the death of their said father; and in determining the

amount, if any, you allow said minor children, you should take into consideration their respective ages, as well as their condition in life, and the amount, if any, you may find from the evidence the deceased would probably have contributed to each of them during their respective minorities, had he lived.''

The above instruction is substantially in the form given and approved by us under similar circumstances in Holman v. Ry. Co., 278 S. W. 1000, 312 Mo. 342. This assignment of error is overruled.

Counsel for appellant suggest other grounds of error in their printed argument but as they were not preserved in the motion for new trial or presented in assignment of errors or points and authorities they will, of course, not be considered here.

No reversible error appears and the judgment is affirmed. All concur.