W. C. COLEMAN, RESPONDENT, v. L. B. FLETCHER, APPELLANT.—188 S. W. (2d) 959.

Springfield Court of Appeals. July 19, 1945.

Rehearing denied August 7, 1945.

*Edward F. Sharp* for appellant.

816

*Ward & Reeves* for respondent.

VANDEVENTER, J.—This action was begun by the filing of a petition in the circuit court of New Madrid County, Missouri, on the

21st day of November, 1941.ᐧ The plaintiff (respondent here) alleged that in January, 1940, he entered into a contract with the defendant (appellant here) under the conditions of which he was to farm a certain twenty-five acres of land for the years 1940 and 1941. That under the terms and conditions of said contract, plaintiff was to receive three-fourths of the cotton raised upon the land and three-fourths of the government payments or benefits thereon and the defendant was to receive one-fourth of said cotton and one-fourth of said benefits. The petition further asserts that plaintiff entered upon said real estate and farmed the same during the year 1940 and that although he rented said real estate for the year 1941 also, the defendant wrongfully and without any lawful right took away from plaintiff the said twenty-five acres of land upon which plaintiff was to have grown cotton in the year 1941 and by reason of such wrong doing on the part of defendant, plaintiff was precluded from growing additional cotton on the twenty-five acres during 1941. That the wrongful taking of the land by the defendant was on or about the 18th day of February, 1941, after the plaintiff had already begun his farming operations for that year. That plaintiff was damaged by reason thereof in the sum of $1675, which would have represented his profit on the cotton, and the additional sum of $260 which would have been his three-fourths of the government benefits. He prayed judgment for $1935 with interest.

Defendant filed an answer and counterclaim, in the first count of which was a general denial as to all matters not thereinafter expressly admitted.

Count II alleged that he verbally rented to plaintiff the land for 1940 only and that he orally notified plaintiff in July, 1940, that he had rented the farm, a portion of which was the twenty-five acres in controversy, to one Roy Berry, and that Berry entered upon said farm in 1940 and sowed some wheat and barley thereon and that in addition to one-fourth of the cotton, the plaintiff had agreed to pay $200 in cash for the 1940 rent; that he had failed to pay the $200 and defendant prayed judgment for $200.

Count III alleged that plaintiff had executed and delivered to defendant a promissory note for $1000, secured by a chattel mortgage, that certain payments and credits had been made and entered upon said note but there remained due and unpaid $270.71 for which, defendant prayed judgment.

Count IV alleged that the plaintiff had agreed to pay additional rent, on another farm, to the defendant in the sum of $60, which was past due and unpaid and for which, judgment was prayed.

Count V alleged that the oral agreement was in violation of the Statute of Frauds, Section 3354, Revised Statutes of Missouri, 1939, was void and no action could be maintained thereon. Plaintiff filed

a reply denying all the new matter set up in Counts II, III and IV of defendant's answer and renewed his prayer for judgment as in the original petition.

The case was tried to a jury which found for the plaintiff in the sum of $1860.71; found for defendant on Count II of his counterclaim in the sum of $200, on Count III thereof for the sum of $270.71 and on Count IV for the sum of $60.

Defendant filed a motion for new trial which was overruled, and after proper steps the case is here.

Briefly, the evidence showed on the part of plaintiff that he entered into an oral agreement with defendant in January, 1940, to rent the twenty-five acres for the years 1940 and 1941 and agreed to pay the defendant as rent one-fourth of the cotton raised thereon, one-fourth of the government benefits, and $200 in cash, the latter amount being one-fourth of the amount that the defendant had to pay to obtain possession of the whole farm which contained the twenty-five acres—that plaintiff put in a cotton crop in 1940 and was preparing to do so in February, 1941, when the defendant informed him that he had rented the land to another person, took possession of the property and plaintiff could not and did not cultivate it for the year 1941. That no notice to vacate was given him by the plaintiff, oral or written. Plaintiff admitted the execution and delivery of the $1000 note and that it had not all been paid. He denied owing the Sixty Dollars.

In testifying as to his preparation for the farming of the twenty-five acres of cotton land in 1941, the plaintiff said:

"I was going to have to go in debt to farm that land—I had to go in debt to take that other twenty-five acres around seven or eight hundred dollars extra—it cost extra stock and tools.

"I had to get extra equipment to farm the additional land and for that reason told him I wouldn't take it unless I could get it for two years. . . .

"The first I knowed I didn't have the twenty-five acres, No. 1-C76, Mr. Berry came over and told me he had all the farm rented; he said he had all of it and was going to pool his Government money with Mr. Fletcher; that was between the first and 15th of February, 1941. I had carried off a load of cotton and Mr. Fletcher met me and told me I couldn't have the twenty-five acres of cotton; this was about the middle of February, 1941. I told him I didn't see how I could ever pay what I had to go in debt for if he took that twenty-five acres of cotton away from me."

The plaintiff further testified that he farmed land similar to the twenty-five acres in 1941 but that it was not as good as the twenty-five acres; that the twenty-five acres would have made 750 pounds of lint cotton to the acre and that similar land would have produced that during the year 1941; that he raised a cotton crop in 1941 and in his

judgment the twenty-five acres would have produced about $3700 or $3800 worth of cotton; that cotton in 1941 sold for $100 a bale; that he had had thirty or thirty-one years experience in growing cotton. It would have cost him $200 to raise the cotton plus the one-fourth rent payable to the defendant and $700 or $800 for picking, that the total expense of raising the crop would have been in the neighborhood of $1100, which would leave about $2650 worth of cotton, one-fourth of which would have been the share of the defendant. That plaintiff's part would have been $1700 or $1800.

Vester Brown testified that he lived in that vicinity, was acquainted with the twenty-five acres of land in controversy, that he had farmed all his life but had been in that vicinity only five years; that he was a cotton farmer, that he was acquainted with the nature of the soil in that community and that the land in that vicinity during the year 1941 produced about one and one-half bales per acre.

J. B. Young testified that he lived a mile north of Gideon and knew where the twenty-five acres of land were located, that he had been a farmer all his life, that in 1941 he farmed adjoining lands to the twenty-five acres and that in the year 1941, the production was about one and one-fourth bales per acre; that he received about $70 per acre as his part and that the cotton raised would sell for about $100 per acre.

H. J. Cook testified that he lived two and one-half miles northwest of Gideon, that he was acquainted with the twenty-five acres in controversy and knew where it was located. That he knew the character of the soil of the twenty-five acres and that he made twenty-one bales on thirteen acres, which was over one and one-half bales per acre, but he did not believe the land in controversy would have made that much. He estimated that it would have produced one and one-fourth bales per acre.

J. L. Pool testified that he had farmed all his life and that he lived on a farm near Gideon in 1940 and 1941. That he was acquainted with the twenty-five acres involved, knew where it was located and saw it in 1940. That in his opinion the twenty-five acres would have produced one and one-half bales per acre of lint cotton in 1941, and that he was a tenant of the defendant in 1940.

The defendant's testimony was that he rented the land to the plaintiff for the year 1940 only, that the tenancy terminated on December 31, 1940 but that he told the plaintiff in July or August, 1940, that he could not have the land any more, that he had rented it to other parties. That he was to receive as rent one-fourth of the cotton and $200 in cash. He denied renting the twenty-five acres to plaintiff for the year 1941. Defendant further testified that he notified plaintiff, orally, early in the fall of 1940 to vacate the twenty-five acres. Defendant's evidence also sustained his claims for $200 in Count II of his counterclaim, for $270.71 in Count III and for $60 in Count IV.

The case was briefed and argued in this court and a majority opinion (Coleman v. Fletcher, 167 S. W. (2d) 906) held that the petition was not on the contract but was one in tort for the wrongful eviction of plaintiff and affirmed the judgment. BLAIR, P. J., dissented. The case went to the Supreme Court on *certiorari*. The Supreme Court held (State ex rel. Fletcher v. Blair et al., 178 S. W. (2d) 322), that if the Statute of Frauds applied to the oral contract to rent for the two years 1940-1941, the plaintiff could not recover compensatory damages for the second year, either on the theory of breach of contract or in tort. It was there said:

"If the Statute of Frauds did apply to the oral two-year lease then the plaintiff tenant could not recover compensatory damages for the second year, either on the theory of breach of contract *or* in tort. On the contract theory this Court and two of the Courts of Appeals have ruled that when a contract is voidable under the Statute of Frauds, and therefore unenforceable by specific performance in equity, the alternative is not open to the injured party to sue for breach of contract. And on the tort theory, if the Statute of Frauds was applicable to the lease, then the relator landowner and not the plaintiff tenant had the *right* of possession the second year; and in that situation under the Lowery and Chappee cases, *supra,* the plaintiff could not recover more than nominal damages in trespass—if the action would lie at all."

The opinion of this court was quashed in part and sent back to us to determine whether the plaintiff held the lands under a tenancy from year to year and if so was he entitled to possession of the land unless defendant gave him a written notice to vacate more than sixty days prior to the first day of January, 1941? The Supreme Court said:

"In that connection respondents' brief here argues the two-year oral lease was a lease from year to year, and that under Section 2969 it could be terminated at the end of the first year only by giving sixty days written notice as that statute requires; whereas relator neither pleaded nor proved such written notice had been given; in consequence of which plaintiff's holding over was valid and the Statute of Limitations could not apply. Respondents did not mention, discuss or rule that question in their opinion, and since this is a *certiorari* proceeding only for the conflict of decisions, we cannot consider it."

The petition in this case and the counterclaim of defendant were not attacked by demurrer or otherwise. At the close of the plaintiff's evidence, the original bill of exceptions, which we have before us, states as follows: "Now at the close of plaintiff's case comes the defendant and offers a demurrer which is in words and figures as follows" and then follows a notation written in longhand, "clerk copy." The original bill of exceptions does not contain the demurrer,

does not show any ruling thereon by the court and shows no exceptions by defendant.

At the close of all the evidence we find this notation: "Mr. Sharp: At the close of the whole case, defendant offers a demurrer which is as follows: Clerk Copy." The demurrer is not set out, no ruling by the court appears nor was any exception saved by defendant. In the printed transcript there is a note by appellant stating that the demurrer does not appear in the file. Under this condition of the record, the sufficiency of the petition and the sufficiency of the evidence are not before us for review. In his opinion, SMITH, J., said (167 S. W. (2d) 1. c. 909):

"The record before us shows that the appellant did not question in any way the sufficiency of the petition and did not by written demurrer question the sufficiency of the evidence to make a case for the jury on plaintiff's petition, nor was there any ruling on the demurrers to the evidence, and no exceptions saved to the court's failure to rule. The defendant answered the petition, filed counterclaims, and voluntarily requested instructions submitting all of the issues to the jury. Such acts now preclude the appellant from complaining of each and all of the alleged errors under this point. [Clay v. Owen, 338 Mo. 1061, 93 S. W. (2d) 914; Gee v. Sherman, 221 Mo. App. 121, 293 S. W. 789.]"

The petition alleges that plaintiff entered into a contract with defendant under the terms and conditions of which he was to rent the twenty-five acres for the years 1940 and 1941. That he was to pay the defendant as rent one-fourth of the cotton raised thereon and one-fourth of the government benefits or payments; that plaintiff entered upon said real estate and farmed the same during the year 1940, planting the twenty-five acres in cotton and that on or about the 18th day of February, 1941, the defendant wrongfully and without any lawful right took said premises away from plaintiff after plaintiff had already begun his farm operations on said land for the year 1941 and prevented him from growing cotton on said land during that year. That the reasonable value of the cotton, which would have been plaintiff's net share, and could have been grown on said land during the year 1941 was $1675 and that plaintiffs portion of the government payment of benefits would have been the sum of $260, all of which plaintiff was deprived of by the wrongful eviction of plaintiff by the defendant. He prays judgment for the sum of $1935 with interest from the date of the filing of the suit. We believe this petition was sufficient upon plaintiff's theory of a tenancy from year to year, especially where its sufficiency was in no manner challenged by the defendant.

In support of this petition, the plaintiff's evidence showed an oral contract or lease for the land for a term longer than one year from the date it was entered into and possession taken, which was

unenforceable as such because it came within the provisions of the Statute of Frauds. [Mo. Revised Statutes Anno., secs. 3352 and 3354; Beiler v. Devoll, 40 Mo. App. 251; Briar v. Robertson, 19 Mo. App. 66.]

But this does not mean that the plaintiff is entirely without the right of redress. He entered upon the land immediately after entering into the void contract. He farmed the land for the year 1940 and defendant received one-fourth of the cotton raised thereon as rent. Plaintiff stayed upon the land until February, 1941, and it is conceded in the testimony offered by both parties that no written notice to vacate was given to plaintiff by defendant more than sixty days before the end of the year. Defendant took possession of the twenty-five acres about February, 1941, and plaintiff was prevented from farming it. It is true that defendant denied that he rented the land to plaintiff for 1941, but it is not denied that plaintiff tended the land in 1940 as a renter and it is admitted by defendant that he did not give the plaintiff a written notice to vacate sixty days prior to the end of the year or at any other time.

The law is well settled that where a tenant enters into the possession of agricultural lands under an oral lease or contract, or one that is otherwise void or defective, and pays rent to his landlord, it creates a tenancy at will and if the tenant remains in possession, by operation of law, it becomes a tenancy from year to year and can be terminated on the part of the landlord, only, by giving the tenant a written notice to vacate at least sixty days before the end of the year. [Mo. Revised Statutes Anno., sec. 2969; Hosli v. Yokel, 58 Mo. App. 169; Kroeger v. Bohrer, 91 S. W. 159, 116 Mo. App. 208; Pollmann v. Schaper, 138 S. W. 898, 158 Mo. App. 615; Nichols v. Hicklin, 106 S. W. 1109, 127 Mo. App. 672; Ray v. Blackman, 97 S. W. 212, 120 Mo. App. 497; Minton v. Steinhauer, 147 S. W. 1014, 243 Mo. 51; Hauer v. Harkreader (Mo. App.), 221 S. W. 813; Womack v. Jenkins, 107 S. W. 423, 128 Mo. App. 408; Butts v. Fox, 96 Mo. App. 437, 70 S. W. 515; Fisher v. Lape (Mo. App), 176 S. W. (2d) 871; Hillis v. Rhodes, 223 S. W. 973, 205 Mo. App. 439.]

We therefore hold that plaintiff in February, 1941, was holding the premises under a tenancy from year to year, was therefore entitled to the possession and for his wrongful eviction, the defendant would be liable in damages.

One other matter connected with this case deserves some comment. This case was tried January 30, 1942. An appeal was taken June 24, 1942. The briefs for appellant were filed in this court October 10, 1942. They contained Points and Authorities I to V, only. The opinion of this court was handed down January 13, 1943, in which the writer, Smith, J., discussed, considered and ruled upon each of them. There was a dissent by Blair, P. J. The case went to the Supreme Court on *certiorari* and an opinion was handed down there

February 7, 1944, quashing the opinion of this court, in part, but leaving for our decision the question whether a tenancy from year to year had been created. This point was raised by respondent. On October 21, 1944, attorney for appellant sent to the clerk of this court several printed pages labelled "VI" with a request to insert it at Page 11 of the brief, following Point "V" of his Points and Authorities. Nothing appears in the records or files here to show that respondent ever received a copy of it, and no permission was asked of, or granted by, this court to file this supplemental citation of authorities. It attacks the evidence offered by plaintiff as to the damages sustained by him and asserts that his "estimated profits were wholly speculative and incapable of proof." The filing of this supplemental brief violated Rule 18 of the Springfield Court of Appeals in force at that time and also violates Sections 1.08, 1.09 and 1.13 of the present rules of the Supreme Court of Missouri, outlining practice and procedure in the Supreme and Appellate courts. It has many times been held by this court and by the Supreme Court that the failure of the appellant to include a point in his "Points relied upon" or "Points and Authorities" is considered an abandonment thereof. [Perryman v. Mo. Pacific R. Co., 31 S. W. (2d) 4, 326 Mo. 176; Burch v. Cleveland C. C. & St. Louis Ry., 40 S. W. (2d) 688; Moffett v. Butler Mfg. Co., 46 S. W. (2d) 869; Scott v. Mo. Pacific R. Co., 62 S. W. (2d) 834, 333 Mo. 374; Bank of Brimson v. Graham, 76 S. W. (2d) 376, 335 Mo. 1196; 96 A. L. R. 399; Langston v. Howell County, 108 S. W. (2d) 19; State ex rel. City of St. Louis v. Public Service Com., 110 S. W. (2d) 749, 341 Mo. 920; Wallace v. Brown, 165 S. W. (2d) 408.]

It has also been held that questions raised for the first time in the supplemental brief of the party complaining will not be considered on appeal. [Cross v. Atchison, Topeka & Santa Fe Railroad Co., 42 S. W. 675, 141 Mo. 132; Lucas v. Cella, 91 S. W. 996, 115 Mo. App. 395; Ridenour v. Wilcox, 147 S. W. 852, 164 Mo. App. 576; Hydraulic Press Brick Co. v. Nickell, 221 S. W. 815; Fuenfgeld v. Holt, 70 S. W. (2d) 143; Morris v. Washington Nat'l. Insurance Co., 90 S. W. (2d) 138; Brown v. Alton R. Co., 151 S. W. (2d) 727.]

This point is therefore not before this court for review. All other points in this case, raised by appellant, have been considered and passed upon by the Supreme Court or this court and finding no reversible error, the judgment of the trial court is affirmed. *Fulbright, P. J.,* concurs; *Blair, J.,* dissents.