Alphonse JANSEN and Teresa Jansen,
Appellants–Respondents,

v.

Louis POBST, Vernon Pobst, and Andrew
Pobst, Respondents–Appellants.

Nos. 20225, 20241.

Missouri Court of Appeals,
Southern District,
Division One.

April 29, 1996.

Donald Rhodes, Bloomfield, for appellants-respondents.

Jeffrey P. Hine, Osburn, Hine, Kuntze & Yates, L.L.C., Cape Girardeau, for respondents-appellants.

MONTGOMERY, Presiding Judge.

This case involves a dispute over the validity of a farm lease and the sufficiency of a notice under § 441.050 [1] to terminate a year-to-year tenancy. On March 24, 1994, Alphonse Jansen and Teresa Jansen (Plaintiffs) purchased 80 acres of farm land (the farm) in Scott County, Missouri. At the time of the purchase, Louis Pobst and his sons, Vernon Pobst and Andrew Pobst (Defendants) allegedly occupied the farm under the terms of a lease with Mary Hedger (Mary),[2] one of Plaintiffs' predecessors in title. After Plaintiffs bought the farm, they notified Defendants to "remove from and quit possession" of the farm on or before June 1, 1994. When Defendants ignored the notice, this action followed.

Plaintiffs filed their two-count petition for declaratory judgment and unlawful detainer on July 5, 1994. In Count I, Plaintiffs requested an order "setting aside and voiding" the lease because Mary did not own the farm when she entered into the lease with Defen-

dants. In Count II, Plaintiffs alleged they owned the farm and made written demand of Defendants for possession, but Defendants refused to vacate. Plaintiffs prayed for possession of the farm.

On February 21, 1995, Plaintiffs filed their second amended petition which retained the declaratory judgment count but omitted the unlawful detainer count. Plaintiffs replaced the latter with a count for ejectment.

A jury heard the declaratory judgment count on February 24, 1995, and returned a verdict finding that the lease in question was invalid. On April 17, 1995, the trial court sustained Defendants' motion for summary judgment on the ejectment count finding that Plaintiffs' notice to vacate was insufficient to terminate Defendants' tenancy and that "Defendants have a present crop for the 1995 crop year."

The trial court's "Order and Judgment" entered judgment for Plaintiffs on the jury's verdict and denied Defendants' motion for judgment notwithstanding the verdict and alternative motion for new trial. After sustaining the summary judgment motion the trial court further decreed:

> Defendants shall have the right to possess the subject premises and harvest the 1995 crop and shall deliver to Plaintiffs one third the crops grown thereon for the 1995 agricultural year with the Plaintiffs to pay one third of the fertilizer expense. Defendants are to vacate the subject property following severance of all crops, but not later than December 31, 1995.

Defendants appeal from the judgment on Count I declaring the lease invalid and alternatively appeal the order on Count II setting 1995 rent at one-third crop share. Plaintiffs appeal from the summary judgment on Count II in favor of Defendants.

*DEFENDANTS' APPEAL*

The jury heard evidence, mostly undisputed, on the farm lease arrangements made between Defendants and Euriel and Mary Hedger over a lengthy time period. Such

---

1. Statutory references are to RSMo 1994 unless otherwise indicated.

2. For the sake of clarity only, we refer to Mary Hedger by her forename in this opinion.

evidence revealed that the Hedgers first rented the farm to Defendants for one year in the early 1960s. The next year these parties entered into a written lease on the farm for a five-year period with a five-year option to renew. After the first lease expired, Defendants continued leasing the farm from the Hedgers by means of a written lease. Euriel died in 1975 and Mary, his wife, continued leasing the farm to Defendants as had been done in the past.

In 1984 Mary, a resident of Scott County, established a trust and conveyed the farm to Della Eggimann and John Hedger (Trustees), who are her children. The trust terms provided that Mary receive all trust income and upon her death the trust assets would be distributed to her children.

After 1984 Mary continued to collect the $2500 yearly rent under the lease in existence when the trust was established. Both Trustees knew the Defendants were leasing the farm and knew that in the past Defendants always had a long-term lease on it. They also knew Mary disregarded the trust terms and collected the rent herself. Because Mary was "headstrong" the Trustees offered no objection to her collecting the rent.

In 1989 Defendants sent Mary a new written lease on the farm when she was visiting one of her children in Idaho. She signed the lease and returned it to Defendants even though the current lease did not expire until December 31, 1990. The "new" lease commenced on January 1, 1991, for a five-year term and contained an option to renew for an additional five years. Defendants recorded this lease in the Scott County Recorder's Office.

Mary continued to collect the yearly farm rent until her death on February 19, 1994. On March 14, 1994, Plaintiffs purchased the farm from the Trustees. Plaintiffs' efforts to obtain possession of the farm soon followed.

At trial Defendants did not dispute that the farm was a trust asset when Mary signed the lease in 1989. Instead, Defendants contended Mary signed the lease as an agent for the trust and alternatively that the Trustees ratified the lease and were bound by its terms. The trial court instructed the jury on Defendants' theory of apparent authority and ratification. On these issues the jury resolved the parties' conflicting evidence in favor of Plaintiffs.

Defendants' principal point relied on asserts the trial court erred in entering judgment on the jury verdict and denying their motion for judgment notwithstanding the verdict because the evidence conclusively established Mary had apparent authority to enter into the lease and, therefore, a verdict should have been directed for Defendants. Defendants' point further alleges that "the evidence also established that the Trustees of the trust were aware of the written lease and never objected to the lease after having been informed of the lease such that the trust ratified the lease."

■ We treat an appeal from the denial of a motion for judgment notwithstanding the verdict in the same fashion as an appeal from the denial of a motion for directed verdict at the close of the evidence. *Norris v. Jones,* 687 S.W.2d 280, 281 (Mo.App.1985). "In both instances, the primary question is, did plaintiff make a submissible case?" *Id.* We view the evidence most favorably to the verdict and give it the benefit of all favorable inferences which may be drawn from the evidence. *Scott v. Car City Motor Co.,* 847 S.W.2d 861, 864 (Mo.App.1992). A judgment notwithstanding the verdict is proper only if upon such a view of the evidence, reasonable minds could not differ as to the result. *Id.*

■ Viewed in that light, the evidence before the jury on the invalidity of the lease was clear that Mary entered into the lease in question in 1989 when she no longer owned the farm. Although Defendants offered evidence that Mary had apparent authority to enter into the lease, Plaintiffs offered evidence from the Trustees to the contrary.

John Hedger, a resident of the State of Washington, testified he went to the home of Louis Pobst in 1984 or 1985, advised him of the existence of the trust agreement, and told him that any future leases on the farm would have to be signed by one of the Trustees.

Similarly, Della Eggimann, a resident of Florissant, Missouri, testified she called Mrs. Louis Pobst in 1984 or 1985 to advise her that the farm had been placed in trust and that her mother was not allowed to "sign any more contracts." She told Mrs. Pobst that any future lease should be handled by the Trustees because they did not "want the land tied up" for a long number of years anymore.

Indifferent to the Trustees' testimony, Defendants argue the evidence shows that Mary was the apparent agent of the Trustees because, by allowing her to collect the rent and otherwise deal with Defendants, they held Mary out as agent for the trust. The doctrine of apparent authority required the trial court to sustain Defendants' motion for judgment notwithstanding the verdict only if reasonable minds could not differ on whether Defendants reasonably and prudently believed that Mary had the authority to act on behalf of the Trustees at the time of the 1989 transaction.

In *Wynn v. McMahon Ford Co.*, 414 S.W.2d 330, 336 (Mo.App.1967), the court stated:

> The doctrine of apparent authority is one of wide-ranging application and embodies the general proposition that where a person has created such an appearance of things that it causes a third party reasonably and prudently to believe that a second party has the power to act on behalf of the first person the latter is thereby bound to the third person who relies on the appearance so created.

Defendants' Instruction No. 7, patterned after MAI 13.07(2) [1986 New], allowed the jury to find the lease valid if Mary had the apparent authority to make it. The Committee Comment under MAI 13.07(2) states that Defendants' "proof must show both that the principal knew or had reason to know of the actor's misleading conduct and failed to act to prevent reliance on such misleading conduct of the actor." *See Barton v. Snellson*, 735 S.W.2d 160, 162 (Mo.App.1987) (apparent authority is created by the conduct of the principal which causes a third person reasonably to believe that another has the authority to act for the principal).

Here, the trial court properly denied Defendants' motion for directed verdict at the close of the evidence. Plaintiffs presented probative evidence that Defendants could not have reasonably and prudently relied on Mary's conduct in 1989 after the Trustees had earlier advised Defendants that Mary had no authority to act for them. Therefore, denial of the motion for judgment notwithstanding the verdict was proper because reasonable minds could differ on whether Mary had apparent authority to act after the Trustees had taken steps designed to prevent Defendants' reliance on Mary's misleading conduct.

■ Defendants next assert that the Trustees ratified the "new" lease. "Ratification requires 'an express or implied adoption or confirmation, with knowledge of all material matters, by one person of an act performed on his behalf by another who at that time assumed to act as his agent but lacked authority to do so.'" *Unlimited Equip. Lines v. Graphic Arts Ctr.*, 889 S.W.2d 926, 936 (Mo.App.1994) (quoting *American Multi–Cinema v. Talayna's N.W.*, 848 S.W.2d 557, 559 (Mo.App.1993)).

On this issue Plaintiffs offered the Trustees' testimony that neither one of them had knowledge of the existence of the new lease until 1994. Admittedly, the Trustees knew the farm was leased to Defendants when the trust was created.

Della Eggimann testified she assumed any lease Mary signed with Defendants after 1985 was illegal because Defendants knew Mary lacked authority to do so. Furthermore, Eggimann testified that the Trustees did not have a copy of the lease in existence in 1984. The jury could reasonably infer from this evidence that the Trustees allowed Mary to collect rent under the terms of the lease existing when the trust was created.

Based on our standard of review, discussed earlier, we conclude that reasonable minds could differ on the ratification issue in light of the Trustees' testimony. Plaintiffs' evidence was sufficient to make a jury question on whether the Trustees adopted or confirmed the lease in question. Point I is denied.

Plaintiffs' remaining point concerning the amount of the 1995 crop rent will be discussed *infra*.

## PLAINTIFFS' APPEAL

We address Plaintiffs' two points relied on together because the dispositive question is whether Plaintiffs gave proper notice to terminate Defendants' year-to-year tenancy. The trial court granted summary judgment in favor of Defendants solely on the basis that the notice to terminate was insufficient.

Plaintiffs contend the trial court improperly sustained the motion for summary judgment on Count II of their second amended petition because the evidence shows Defendants occupied the farm as year-to-year tenants and Plaintiffs gave them timely and adequate written notice of their intent to terminate said tenancy. We agree.

Defendants' motion for summary judgment alleged (1) they occupied the farm as tenants for agricultural purposes and, if their lease was invalid, they occupied the farm since 1990 as tenants under an oral year-to-year lease; (2) Plaintiffs purchased the farm knowing Defendants had possession as tenants; (3) the Trustees knew Defendants occupied the farm and acknowledged receipt of rent paid by them through the year 1994; (4) after Plaintiffs purchased the farm they gave Defendants written notice to vacate in May of 1994 and demanded possession on June 1, 1994; and (5) the written notice failed to properly terminate Defendants' year-to-year tenancy under the requirements of § 441.050 because Plaintiffs failed to give them sixty days' notice to vacate at the end of 1994.

The notice described in Defendants' motion reads as follows:

> You are hereby notified that it is [Plaintiff's] intention to terminate your tenancy, and I do hereby terminate the same as of the date hereafter mentioned and you are hereby required on or before the 1st day of June, 1994, to remove from and quit possession of [the farm], now occupied by you as tenant ... and to deliver to [Plaintiff], on or before said day, the full and complete possession thereof.

The parties dispute only the legal effect of the above notice. The other facts alleged in Defendants' motion are undisputed. Therefore, our review is whether the trial court's ruling was correct as a matter of law. *State ex rel. Menkhus v. City of Pevely*, 865 S.W.2d 871, 873 (Mo.App.1993).

When considering a summary judgment appeal, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We accord the non-movant the benefit of all reasonable inferences from the record. *Id.* Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.*

Rule 74.04, the summary judgment rule, divides movants into two classes: "claimants" and "defending parties." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 380. A defending party is one against whom recovery is sought. *Id.* Where, as here, the party moving for summary judgment is a defending party who will not bear the burden of persuasion at trial, such party need not controvert each element of the non-movant's claim in order to establish a right to summary judgment. *Id.* at 381. Rather, a defending party may establish a right to judgment by showing facts that negate any one of the claimant's elements facts, or by showing that the non-movant, after an adequate period of discovery, has been unable to produce, and will be unable to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements. *Id.*

Plaintiff is entitled to recover in an ejectment action by showing that (1) defendant possessed the claimed premises at the commencement of the action, and (2) plaintiff had the right of possession thereof. § 524.080. *See Gal v. Bishop*, 674 S.W.2d 680, 682–83 (Mo.App.1984) (elements of cause of action in ejectment are established by showing (1) plaintiff's ownership of the prop-

erty and (2) defendant's retention of possession of said property under no valid right after demand for surrender).

■ Thus, Defendants' motion for summary judgment attempted to negate one element of Plaintiffs' claim, i.e., Plaintiffs had no right of possession because Defendants' year-to-year tenancy had not been terminated by proper notice.

Both parties agree that, assuming the invalidity of the lease, Defendants occupied the farm as year-to-year tenants by virtue of the following rule:

> The law is well settled that where a tenant enters into the possession of agriculture lands under an oral lease or contract, or one that is otherwise void or defective, and pays rent to his landlord, it creates a tenancy at will and if the tenant remains in possession, by operation of law, it becomes a tenancy from year to year and can be terminated on the part of the landlord, only, by giving the tenant a written notice to vacate at least 60 days before the end of the year. [Citing predecessor to § 441.050]

*Coleman v. Fletcher,* 238 Mo.App. 813, 188 S.W.2d 959, 963 (1945). *See Vanderhoff v. Lawrence,* 206 S.W.2d 569, 570 (Mo.1947).

We assume, without deciding, that the parties have correctly characterized Defendants as year-to-year tenants. Therefore, § 441.050 sets forth the requirements for terminating Defendants' tenancy.

■ "Either party may terminate a tenancy from year to year by giving notice, in writing, of his intention to terminate the same, not less than sixty days next before the end of the year." § 441.050. Clearly, the three statutory requirements to terminate are (1) a written notice, (2) an indication of intent to terminate, and (3) sixty days' notice before the end of the year. It is equally clear that the statute does not require the notice to state a specific date to vacate.

Because Defendants entered into possession of the farm on January 1, 1991, under the invalid lease, both sides agree that Defendants' year-to-year tenancy coincided with the calendar year. Accordingly, a timely notice to terminate Defendants' tenancy for any year subsequent to 1991 had to be provided by the first day of November preceding it. *Busby v. Stimpson,* 542 S.W.2d 551, 554 (Mo.App.1976) (landlord can terminate year-to-year tenancy only by giving tenant written notice to vacate at least sixty days before the year's end).

Without question, Plaintiffs' notice satisfied the three statutory requirements. It was in writing, stated Plaintiffs' intent to terminate, and was served on Defendants in May 1994, well before the deadline of November 1, 1994. The trial court's determination that the notice was deficient was necessarily based on Plaintiffs' demand for possession on June 1, 1994, instead of January 1, 1995. We find no authority holding that such a notice is deficient. Defendants candidly admit they have been "unable to find any authority construing a notice served seven months before the tenancy could possibly be ended, but yet demanding virtually immediate possession."

Based on *Estate of Kiefer v. Gegg,* 622 S.W.2d 733 (Mo.App.1981), we find Plaintiffs' notice to vacate was sufficient to terminate Defendants' year-to-year tenancy. There, the tenant farmed land for several years, including the 1979 farm season, on a year-to-year tenancy within the meaning of § 441.050. Accordingly, he was entitled to sixty days' notice of the termination of his tenancy. His landlord died on May 1, 1979. The administrator of the landlord's estate was appointed on May 16, 1979.

The tenant farmed the land for the remainder of the 1979 farm season but the administrator, by order of the probate court, rented the land to another person for the next year. Tenant was never given written notice of the termination of his tenancy. The tenant contended he was entitled to farm the land in 1980 because the administrator failed to give him sixty days' notice of termination as required by § 441.050. The appellate court disagreed and said, "Former tenant had actual notice of the administrator of decedent's estate and, as a result, his rights as a tenant ended at the close of the 1979 farm season." *Id.* at 734.

Here, Defendants had written notice of Plaintiffs' intent to terminate well over sixty days before the end of 1994. The tenant in *Gegg* had no written notice to vacate but had actual notice of an intent to terminate because the administrator had rented the land to another person. If actual notice is sufficient to terminate, as in *Gegg*, it follows that the notice here was sufficient to terminate. Instant Defendants received a notice complying with the statute in every respect except it contained a premature date to vacate which Defendants ignored anyway.

Therefore, as a matter of law, Defendants failed to negate the element in Plaintiffs' claim that Plaintiffs had the right to possession of the farm at the time the ejectment action was commenced. The summary judgment must be reversed.

■ The remaining issue is whether the trial court correctly determined that Defendants owed Plaintiffs one-third of the 1995 crop and Plaintiffs owed one-third of the fertilizer expense. Both parties agree that nothing in the record supports this determination. To support a summary judgment, the pleadings, depositions and admissions on file, along with any affidavits, must make it manifest that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Moore v. Bentrup*, 840 S.W.2d 295, 297 (Mo. App.1992). Because the record here is devoid of anything to support the trial court's determination concerning 1995 rent, that portion of the judgment must also be reversed.

In summary, we affirm that portion of the judgment which declares that the lease is invalid. We reverse that portion of the judgment which sustains Defendants' motion for summary judgment, including the determination of 1995 rent, and the case is remanded for further proceedings on Plaintiffs' ejectment claim.

GARRISON and BARNEY, JJ., concur.